IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM MEADOWS AND JEANIE          *
MEADOWS,                            *
                                    *
        Plaintiffs,                 *
                                    *       CASE NO. 1:05CV1091-m
vs.                                 *
                                    *
THE MEGA LIFE AND HEALTH            *
INSURANCE COMPANY, AND ITS          *
AGENT, MICHAEL JOSHUA MILFORD,      *
ET AL.,                             *
                                    *
        Defendants.                 *


## NOTICE OF REMOVAL

TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
ALABAMA, SOUTHERN DIVISION:

COMES NOW, defendant The MEGA Life and Health Insurance Company ("MEGA"),

by and through its undersigned counsel, appearing specially so as to reserve any and all defenses

available under Rule 12 of the Federal Rules of Civil Procedure, and files this Notice of Removal

of this action from the Circuit Court of Coffee County, Alabama (Elba Division), to the United

States District Court for the Middle District of Alabama, Southern Division, and in support

hereof, respectfully shows unto this Court the following matters and facts, to-wit:

Plaintiffs filed this action on October 7, 2005, in the Circuit Court of Coffee County,

Alabama (Elba Division), being Case No. CV-2005-102, against MEGA, Michael Joshua

Milford and certain fictitious defendants.  In a six-count Complaint, Plaintiffs allege that

Defendants misrepresented and/or suppressed material facts to them at the time of application for

health insurance coverage from MEGA and in bad faith denied later claims for insurance

benefits, alleging fraudulent misrepresentation, fraudulent suppression, breach of contract, bad faith denial, and outrage. In addition to compensatory and punitive damages, Plaintiffs also seek costs. A certified copy of the state court's entire file for this matter is attached hereto as Exhibit A.

According to the Circuit Court's records, MEGA was served with process on October 12, 2005, and Defendant Michael Joshua Milford has not yet been served. This Notice is being filed by MEGA in the United States District Court for the Middle District of Alabama, Southern Division, within thirty (30) days of service on MEGA, which is within the time allowed by law for the removal of this civil action to the United States District Court.

MEGA, pursuant to 28 U.S.C. §§ 1441 and 1446, files this Notice of Removal with the Court. This Court has diversity jurisdiction pursuant to the provisions of 28 U.S.C. § 1332 in that the properly joined parties are all residents and citizens (both individual and corporate) of different states, and the amount in controversy exceeds the jurisdictional requisite of $75,000.00, exclusive of interest and costs.

Contemporaneously with the filing of this Notice of Removal, MEGA will file a copy of the Notice of Removal with the Clerk of the Circuit Court of Coffee County, Alabama, in accordance with 28 U.S.C. § 1446(d).

MEGA reserves the right to amend this Notice of Removal as deemed necessary or appropriate.

In addition, should this Court require additional facts or discovery to render a decision in this regard, MEGA respectfully requests that the parties be allowed a period of limited discovery with respect to the jurisdictional issues discussed in this Notice of Removal.

2

## DIVERSITY OF CITIZENSHIP

1.     According to the Complaint, both Plaintiffs are adult resident citizens of the State of Alabama.  Exhibit A, Complaint at ¶ 1.

2.     Defendant The MEGA Life and Health Insurance Company is a corporation organized and existing under the laws of the State of Oklahoma with its principal place of business in the State of Texas.

3.     According to the Complaint, Defendant Michael Joshua Milford ("Milford") is an adult resident citizen of the State of Alabama.  Exhibit A, Complaint at ¶ 3.

4.     The fictitious defendants identified as "A, B, C, and X, Y, Z," in the Complaint may not be considered for purposes of assessing complete diversity of citizenship.  *See* 28 U.S.C. § 1441(a); *Bullock v. United Benefit Insurance Co.*, 165 F. Supp. 2d 1255, 1257 n.1 (M.D. Ala. 2001).

5.     Basically, the Complaint alleges that Milford, while acting as an agent for MEGA, participated in the commission of the misconduct alleged therein by making fraudulent misrepresentations to Plaintiffs and/or by fraudulently suppressing information which Plaintiffs were entitled to know and which Defendants purportedly had a duty to disclose to Plaintiffs. Specifically, Plaintiffs contend that Milford misrepresented and/or suppressed material facts at the time of sale of a MEGA insurance certificate to Plaintiffs.

6.     This action is removable to this Court, pursuant to 28 U.S.C. §§ 1332 and 1441, notwithstanding the joinder of Defendant Milford, because Plaintiffs have fraudulently and improperly joined Milford in this action in an effort to defeat diversity of citizenship. Accordingly, Milford is due to be dismissed and the naming of Milford as a defendant in this action does not affect this Court's jurisdiction.

## AMOUNT IN CONTROVERSY

7.      Generally, the amount in controversy in a given action is determined from the complaint itself, unless it appears that the amount stated in the complaint is not claimed in good faith.  *See Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 353, 81 S. Ct. 1570, 1573, 6 L. Ed. 2d 890 (1961), citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938).   In this case, the amount in controversy requirement is satisfied because Plaintiffs, in their Complaint, assert that Defendants acted in bad faith in refusing to pay insurance claims, made fraudulent misrepresentations to Plaintiffs, fraudulently suppressed information from Plaintiffs, and committed the tort of outrage, and for those causes of action, seek the sum of $10,000,000.00 in damages.  Exhibit A, Complaint.

## FRAUDULENT JOINDER

### I.      Fraudulent Joinder Standard.

8.      "The doctrine of fraudulent joinder had its inception in the courts, and originally was a judicial pronouncement intended to protect non-resident defendants from any misstatement of fact or misjoinder of parties or causes of action knowingly made by plaintiffs for the purpose of  . . . defeating removal to a federal court." *Bentley v. Halliburton Oil Well Cementing Co.*, 174 F.2d 788, 791 (5th Cir. 1949).  A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant with no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921).  This is appropriate because "the Federal courts [will] not sanction devices intended to prevent a removal to a Federal court when one has the right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).  In referring to diversity cases, 28 U.S.C.

4

§ 1441(b)'s language directs the court to align the citizenship of the parties properly joined. If a party is improperly added, the court should disregard that joinder for purposes of removal. Thus, an action may be removable if it is shown that a non-diverse defendant was fraudulently joined.[1]

9.    The joinder of the plaintiff's claims can be so egregious so as to constitute fraudulent joinder, because it wrongfully deprives a defendant of the right of removal. *See Alabama Great Southern Railway Co. v. H. C. Thompson*, 200 U.S. 206, 218 (1906)(stating that "[f]ederal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the [f]ederal courts of the protection of their rights in those tribunals"); *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996)(*abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.), *cert. denied*, 531 U.S. 957 (2000)).

10.    The standard for determining when a defendant has been fraudulently joined is as follows: "[T]he removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981); *see Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213 (S.D. Ala. 1998)(certain defendants were fraudulently joined because there was "no possibility" that plaintiff could establish any cause of action against them). To determine whether a resident defendant has been fraudulently joined, district courts should apply a standard similar to that used for a ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b). *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)(citations omitted).

---

[1]    The term "fraudulent joinder" does not "require a showing of fraud in the conventional sense; it in no way reflects on the integrity of plaintiff or plaintiff's counsel." *American Dredging Co. v. Atlantic Sea Con, Ltd.*, 637 F. Supp. 179, 183 (D.N.J. 1986).

11.    In this case, MEGA submits that removal is proper because when Plaintiffs' Complaint is pierced, as shown herein, there is no reasonable basis as a matter of law for predicting that state law would allow recovery against Milford in order to preclude a finding of fraudulent joinder.

II.    **The Claims Asserted by Plaintiffs Against Milford Cannot Be Established Under Alabama Law.**

12.    A review of Alabama law that governs Plaintiffs' claims shows that Plaintiffs cannot establish any of their causes of action against Milford in state court.  The cornerstone allegations in Plaintiffs' Complaint are that Defendants, including Milford, made certain point-of-sale fraudulent misrepresentations and/or suppression of material facts with regard to a certain health insurance certificate issued by MEGA to Plaintiffs, and breached the contract of insurance, acted in bad faith and committed the tort of outrage in handling claims submitted under the insurance certificate.

A.    **Plaintiffs Cannot Establish Fraud.**

13.    Plaintiffs assert that on or about March 12, 2002, they applied for health insurance coverage from MEGA, which was sold to them by Defendant Milford.  Exhibit A, Complaint at ¶ 6.  Plaintiffs further assert that at that time, Milford told them that any exclusionary endorsement issued with the certificate would be lifted or rescinded after two years from the inception of the certificate.  Exhibit A, Complaint at ¶ 7.  Plaintiffs also assert that they received a letter dated May 9, 2002, from MEGA, whereby they were accepted for coverage and informed of an Exclusionary Endorsement to the coverage.  Exhibit A, Complaint at ¶¶ 9-10.  Plaintiffs allege that Milford's representation was fraudulent.  Exhibit A, Complaint at Counts III and IV.

14.    On March 12, 2002, Plaintiffs applied for a MEGA Health Choice Benefit Plan, which was sold by independent contractor agent Defendant Milford.  Plaintiffs provided certain medical information on their enrollment application, as requested. (Copy of application attached as Exhibit B).  MEGA issued insurance certificate number 053301047 to Plaintiffs, with an effective date of May 7, 2002.  (Copy of insurance certificate attached as Exhibit C – the enrollment application is a part of the insurance certificate).  Based on medical information received from Plaintiffs, it was necessary for MEGA to attach an Exclusionary Endorsement to Plaintiffs' coverage of insurance. (Copy of Exclusionary Endorsement attached as Exhibit D – it also is a part of the insurance certificate).  A letter dated May 9, 2002, was sent from MEGA to Plaintiff William Meadows, via Priority Mail, which, among other things, informed of the acceptance for coverage effective May 7, 2002, requested that Mr. Meadows read the coverage of insurance carefully, and enclosed the enrollment application and the insurance certificate. (Copy of letter attached as Exhibit E).  In that letter, MEGA explained in bold print that "**Based on medical information received, it was necessary for us to attach an Exclusionary Endorsement to your Coverage of Insurance.**"   (Exhibit E).   The Endorsement to the Plaintiffs' Certificate provides that there is no coverage or benefits provided for losses due to the any disease and/or disorder of the heart and/or circulatory system on Plaintiff William V. Meadows, and that there is no coverage or benefits provided for losses due to any disorder and/or diseases of the urinary system on Jeanie L. Meadows (Exhibit D).

15.    According to the definition of Pre-Existing Condition in the insurance certificate:

**Pre-Existing Condition** means a Medical Condition, Sickness or Injury not excluded by name or specific description for which:

     1.     Medical Advice, Consultation, or Treatment was recommended by or received from a Physician within a one year period prior to the Effective Date of Coverage; or

     2.     Symptoms existed which would cause an ordinarily prudent person to seek diagnosis, care or treatment within the one year period before the Effective Date of Coverage.

(Exhibit C, Amendatory Endorsement (underlined emphasis added)).

16.     Given that Plaintiffs' medical conditions were specifically named and excluded by the Exclusionary Endorsement attached to the Certificate at the time of issue, those conditions do not meet the above-quoted definition of a "Pre-Existing Condition" and the provisions regarding a Pre-Existing Condition do not apply. The May 9, 2002 letter from MEGA, which Plaintiffs admittedly received when the coverage was approved by MEGA (Exhibit A, Complaint at ¶¶ 9-10; Exhibits E and F), provided and explained the Exclusionary Endorsement. (Exhibit D). In that letter, Plaintiffs were advised that depending on the condition, those exclusions may be reconsidered in one year. (Exhibit E). The letter also advised that a written request for removal, along with any medical evidence which may be available at the time which relates to the excluded conditions, were required. (Exhibit E).

17.     The insurance certificate also includes a provision for a 10-day right to examine the certificate, whereby if the insured is not satisfied that the coverage meets his or her insurance needs, the certificate may be returned within 10 days after receipt, after which the coverage would be cancelled as of the Certificate Date, all premiums paid would be refunded, and the certificate would be treated as if it had never been issued. (Exhibit C, Important Notice about Statements in the Enrollment Application). Plaintiffs did not take advantage of that provision.

18.     Plaintiffs must present substantial evidence of each of the following elements to establish their fraudulent misrepresentation claim against Milford: "(1) that [Milford] made a

false representation; (2) of a material existing fact; (3) on which [Plaintiffs] reasonably relied; and (4) which proximately caused injury or damage to [Plaintiffs]"(citation omitted). *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1196 (Ala. 2001).

19.    In *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997), the Alabama Supreme Court held that "the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost*, 693 So. 2d at 421. The Court termed that standard as the "reasonable reliance" standard. That is, to recover in a fraud action, a plaintiff must prove that he or she reasonably relied on the defendant's alleged misrepresentation. Under Alabama law, a contracting party has an affirmative duty to read the contracts and related legal documents they sign or receive. *Id.* The Eleventh Circuit Court of Appeals has recognized this "duty to read" requirement:

> ... Alabama law imposes upon a party the duty to read and inspect any document which might affect that person's legal rights or liabilities. It must be said that the receipt of such a document would "provoke inquiry by a person of ordinary prudence," and that inquiry necessarily would consist of actually reading the document. This obligation is part of the "concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests," as stated in *Torres*. If the facts constituting an alleged fraud claim would be apparent from simply reading a given document, a plaintiff's failure to do so renders his reliance on previous misrepresentations unreasonable under the circumstances.

*Ramp Operations, Inc. v. Reliance Ins. Co.*, 805 F.2d 1552, 1556 (11th Cir. 1986).

20.    Here, Plaintiffs could not have reasonably relied on Milford's alleged fraudulent misrepresentations relating to the benefits, particularly the possible exclusions of the MEGA insurance certificate, because of the content of the documents provided to Plaintiffs by MEGA. That is, Plaintiffs undisputedly received a May 9, 2002 letter and enclosed documents from

9

MEGA, accepting Plaintiffs for coverage and providing the insurance certificate (including the enrollment application) and the Exclusionary Endorsement.   (Exhibit A, Complaint at ¶¶ 9-10; Exhibits B–E).   MEGA, in its May 9 letter, requested that Mr. Meadows read the enclosed Coverage of Insurance carefully and call MEGA's toll-free number if he had any questions, so that when he called upon the benefits provided, he could be confident that they would be paid promptly and accurately. (Exhibit E).   That letter also explained in clear, bolded language that an Exclusionary Endorsement had been attached to the coverage based on the medical information provided by Plaintiffs. (Exhibit E).  Furthermore, the letter outlined the period of time and procedure for reconsideration of those exclusions. (Exhibit E).   Plaintiffs at that time did not question or challenge the terms or scope of coverage in any fashion.    Plaintiffs also did not exercise their right to cancel the certificate within 10 days of receipt.

21.     The documents Plaintiffs received from MEGA contradicted the alleged oral misrepresentations made by Milford.  Plaintiffs do not contend that they were not in possession of those documents from their receipt in May of 2002 until Plaintiffs filed this lawsuit, such that they could have reviewed them at any time.  Plaintiffs were requested to and have not asserted that they did not or could not read and understand the documents received from MEGA when the coverage was issued.  Plaintiffs nevertheless had an affirmative duty to read those documents, which unquestionably contained the terms, conditions, benefits and exclusions of the insurance coverage that had been issued to them.  Plaintiffs do not contend that those documents were ambiguous.  Plaintiffs in fact in their Complaint discuss the contents of those documents. (Exhibit A, Complaint at ¶¶ 9–12).  Thus, even if, *arguendo*, the possible benefits exclusion based on existing medical conditions had not been fully explained by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate,

including the Exclusionary Endorsement, when they received those documents along with the May 9 letter from MEGA. Such documents put Plaintiffs on notice that, contrary to Milford's alleged misrepresentation, Plaintiffs' excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy." Instead, Plaintiffs knew or should have known, from the documents received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions. As a result, Plaintiffs' reliance on Milford's alleged misrepresentations was not reasonable. Consequently, Plaintiffs cannot establish each of the requisite elements of their fraudulent misrepresentation claims against Milford, because Plaintiffs cannot show that they reasonably relied on Milford's alleged misrepresentations. Plaintiffs therefore have no possibility of recovery on those claims against Defendant Milford.

**B.    Plaintiffs Cannot Establish Suppression of Material Facts.**

22.    Plaintiffs assert that Defendants, including Defendant Milford, suppressed material facts relating to the benefits, particularly the exclusions of the MEGA insurance certificate. In order to establish a prima facie claim of fraudulent suppression, a plaintiff must produce substantial evidence establishing each of the following elements: "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result." *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 323-24 (Ala. 1999)(citations omitted). It is clear that a plaintiff's

11

reasonable reliance is an essential element of a suppression claim. *See Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 744-45 (Ala. 2002)(quoting *Ex parte Household Retail Services, Inc.*, 744 So. 2d 871, 879 (Ala. 1999)); *Liberty National Life Insurance Co. v. Sherrill*, 551 So. 2d 272, 273 (Ala. 1989); *see also Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997) (referring to the reasonable reliance standard).

23.    Thus, to sustain a claim of fraudulent suppression, a plaintiff must prove, among other elements, the concealment or suppression of material facts by the defendant. *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1197 (Ala. 2001)(quoting *Foremost Insurance Co. v. Parham*, 693 So. 2d 409, 423 (Ala. 1997)). "Where the record indicates that the information alleged to have been suppressed was in fact disclosed, and there are no special circumstances affecting the plaintiff's capacity to comprehend, the plaintiff cannot recover for suppression." *Ex parte Alfa Mutual Fire Insurance Co.*, 742 So. 2d 1237, 1243 (Ala. 1999)(citation omitted). "In other words, plain disclosure to a person competent in intelligence and background to understand the disclosure is the legal antithesis of suppression, by definition." *Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 746 (Ala. 2002).

24.    Plaintiffs cannot show any reasonable reliance on the alleged suppression of material facts or in fact, that Milford even suppressed material facts related to the terms, conditions or benefits of the insurance, such as the possible exclusions for existing medical conditions. As discussed in the preceding section of this Notice of Removal, Plaintiffs do not assert that they did not receive the May 9, 2002 letter from MEGA, their MEGA insurance certificate, or the Exclusionary Endorsement, and in fact in their Complaint, admit receipt of and refer to language from those documents. (Exhibit A, Complaint at ¶¶ 9–12; Exhibits B–E). Plaintiffs had in their possession documents which provided the information allegedly

12

suppressed by Milford.  There is no allegation that MEGA and/or Milford took any affirmative action to prevent Plaintiffs from discovering the facts that were allegedly suppressed from them. Also, Plaintiffs do not contend that they did not or could not read and understand those documents or that those documents did not clearly outline the terms, provisions, benefits and exclusions of the coverage.  Plaintiffs in fact had an affirmative duty to read those documents. Therefore, even if, *arguendo*, the possible benefits exclusion based on existing medical conditions had not been fully disclosed by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate, including the Exclusionary Endorsement, when they received those documents along with the May 9 letter from MEGA. Such documents put Plaintiffs on notice that their excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy."   Instead, Plaintiffs knew or should have known, from the documents received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions.   As a result, Plaintiffs' reliance on the alleged suppression by Milford, when Plaintiffs had in their possession documents from MEGA that provided the information allegedly suppressed, was not reasonable. Consequently, Plaintiffs cannot establish their fraudulent suppression claim against Defendant Milford.

C.    **Plaintiffs' Fraud and Suppression Claims are Barred by the Statute of Limitations.**

25.    Furthermore, MEGA argues that in accordance with *Foremost*, this Court should determine as a matter of law that Plaintiffs should have discovered the alleged fraud or

13

suppression, if any, when they received their insurance certificate and Exclusionary Endorsement in May of 2002.    MEGA also argues that if Plaintiffs' fraud and suppression claims are time-barred, there is no possibility that Plaintiffs can establish those claims against Defendant Milford, and the Court therefore should find that Milford has been fraudulently joined.  *See Owens v. Life Insurance Co. of Georgia,* 289 F. Supp. 2d 1319, 1325 (M.D. Ala. 2003); *Bullock v. United Benefit Insurance Co.*, 165 F. Supp. 2d 1255, 1258 (M.D. Ala. 2001); *Levett v. Independent Life & Accident Insurance Co.*, 814 F. Supp. 1053, 1058 (M.D. Ala. 1993).

26.    The statute of limitations for Plaintiffs' fraud and suppression claims is two years. *See* Ala. Code §§ 6-2-3, 6-2-38; *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001)(claims alleging fraudulent suppression are subject to a two-year statute of limitation); *Foremost Insurance Co., v. Parham*, 693 So. 2d 409, 417 (Ala. 1997)(same); *Casassa v. Liberty Life Insurance Co.*, 949 F. Supp. 825, 828 (M.D. Ala. 1996) (under Alabama law, fraudulent misrepresentation and suppression are subject to a two-year statute of limitations); *Kelly v. Connecticut Mutual Life Insurance Co.*, 628 So. 2d 454, 458, 460 (Ala. 1993) (same).

27.    The statute of limitations for fraud and suppression claims is subject to the "discovery rule," and does not begin to run until the plaintiff discovers or should have discovered the fraud. *See* Ala. Code § 6-2-3.[2]    The Supreme Court of Alabama has revisited the issue of the discovery rule in the context of the statute of limitations and held that under certain circumstances, the issue could be decided as a matter of law.  In *Foremost Insurance Co. v.*

---

[2]    Under Alabama law, the statute of limitations begins to run when the cause of action "accrues," which occurs "as soon as the party in whose favor it arises is entitled to maintain a cause of action thereon," even if the "full amount of damages" is not apparent at the time the legal injury occurs. *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 114 (Ala. 2003).

*Parham*, 693 So. 2d 409 (Ala. 1997)(involving fraudulent misrepresentation and fraudulent suppression), the Court found that the plaintiffs should have discovered the defendant's misrepresentation when the plaintiffs signed and received their sales documents. *Foremost*, 693 So. 2d at 422. Because the plaintiffs received their sales documents more than two years before filing their lawsuit, their misrepresentation claims were barred as a matter of law by the expiration of the applicable two-year statute of limitations. *Id.* The Court noted that the plaintiffs had received documents which, if read or even briefly skimmed, would have put a reasonable person on notice that, contrary to the defendant's representation, they had paid for their first year's coverage. *Id.* at 421-422.

28. Thus, in *Foremost*, the Alabama Supreme Court re-established that the objective standard for determining the accrual date for a fraud or suppression claim imposes a duty to read documents received in connection with a particular transaction. *Id.* at 421. Therefore, fraud claims accrue upon the earlier of: (1) actual discovery of the alleged fraud; or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms. *Id.* This Court as well as the Alabama Supreme Court have uniformly maintained the application of the *Foremost* standard. *See, e.g., Owens v. Life Insurance Co. of Georgia*, 289 F. Supp. 2d 1319, 1326 (M.D. Ala. 2003); *Alfa Life Insurance Corp. v. Green*, 881 So. 2d 987, 991 (Ala. 2003).

29. The *Foremost* decision forecloses the possibility of Plaintiffs here avoiding the statute of limitations bar on their fraud and suppression claims against Milford. In their Complaint, Plaintiffs assert that the alleged fraud and/or suppression occurred when Defendant Milford sold the MEGA insurance certificate to them, which occurred on March 12, 2002. (Exhibit A, Complaint at ¶ 7, Counts III-V). Plaintiffs also admit that they received a May 9,

15

2002 letter from MEGA wherein they were notified of MEGA's acceptance of Plaintiffs' application for insurance coverage effective May 7, 2002, and that enclosed therewith was the insurance certificate issued to them, along with an explanation, in bold print, that based on the medical information provided, an Exclusionary Endorsement had been attached to the coverage. (Exhibit A, Complaint at ¶¶ 6, 7, 9, 10; Exhibits B–E).   Therefore, the Plaintiffs, more than two years before they filed this lawsuit, received documents that if read would have put them on notice that, contrary to Milford's alleged misrepresentation and/or suppression, Plaintiffs' excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy."    Instead, Plaintiffs knew or should have known, from the documents received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions.

30.    Plaintiffs undisputedly had in their possession documents which contradicted the alleged oral misrepresentations made by Milford and provided the information allegedly suppressed. Thus, even if, *arguendo*, the possible exclusion of benefits based on existing medical conditions had not been fully disclosed or explained by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate, including the Exclusionary Endorsement, when they received those documents along with the May 9, 2002 letter from MEGA.   Plaintiffs do not contend that they were incapable of reading and understanding those documents or that the documents were ambiguous, and in fact, in their Complaint refer to language from those documents. (Exhibit A, Complaint at ¶¶ 9–12). Accordingly, it is reasonable to presume that Plaintiffs were capable of reading and

16

understanding those documents in 2002 when they were issued and provided to them. Plaintiffs as a result, in 2002, became aware of the fraud allegedly committed, and the misrepresentations and/or suppression allegedly made, by Milford.

31.    Therefore, under the *Foremost* objective standard, Plaintiffs should have discovered the possibility of fraudulent misrepresentation and/or suppression by Milford in 2002 when they purchased the coverage and received MEGA's May 9 letter, the insurance certificate, and the Exclusionary Endorsement. The two-year statute of limitations commenced running at that time. *See Auto Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001)("The limitations period begins to run when the plaintiff was privy to facts 'which would provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have lead to the discovery of the fraud.'")(citation omitted). As such, the statute of limitations for Plaintiffs' fraud and suppression claims against Milford began running in 2002 and expired no later than 2004, which is more than two years before Plaintiffs filed this lawsuit. As a result, Plaintiffs' claims against Milford are barred by the two-year statute of limitations.

32.    Moreover, the association of Milford as an independent contractor agent for MEGA terminated on December 14, 2002, more than two years before the Plaintiffs' Complaint was filed and thus outside the statute of limitations. Therefore, Milford could not have made any misrepresentations or suppressions of material fact inside the statutory period, such that Plaintiffs' fraud and suppression claims against him have no merit.

33.    Since the Plaintiffs' fraud and suppression claims against Defendant Milford are barred by the statute of limitations, there is no possibility that Plaintiffs can establish those causes of action against Milford.

17

**D.     Plaintiffs Cannot Establish Breach of Contract or Bad Faith.**

34.     Plaintiffs assert claims for breach of contract and bad faith against Defendants, including Defendant Milford. The Alabama Supreme Court has specifically held that a plaintiff cannot pursue breach of contract and/or bad faith claims against an insurance agent arising out of alleged breaches of the insurance contract. In *Ligon Furniture Co. v. O.M. Hughes Insurance, Inc.*, 551 So. 2d 283 (Ala. 1989), the Alabama Supreme Court affirmed summary judgment against the plaintiff on claims against an insurance agent. The Court held that Hughes (the agent) was not a party to the insurance contract; thus, the plaintiff could not recover on a breach of contract claim. *Ligon*, 551 So. 2d at 285. Addressing a bad faith claim, the Court affirmed summary judgment in favor of the agent because "bad faith" claims only apply to parties to the insurance contract. *Id.* Four years later, the Alabama Supreme Court reaffirmed its ruling in *Ligon* that a breach of contract claim does not exist against a broker who placed insurance coverage for the plaintiff. *See Pate v. Rollison Logging Equipment, Inc.*, 628 So. 2d 337 (Ala. 1993). In *Pate*, the Court held that "Anderson (the broker) cannot be liable for breach of contract, because he acted as a broker to place the insurance and was not a party." *Pate*, 628 So. 2d at 343.

35.     Federal courts in Alabama have also addressed the issue of breach of contract and bad faith claims against insurance agents/brokers and concluded that *Ligon* controlled the issue. *See Bullock v. United Benefit Insurance Co.*, 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001)(finding that the insurance agent was not a proper defendant for a breach of contract claim by the insured); *McDonald v. Integon General Insurance Co.*, 1996 U.S. Dist. Lexis 16890 (S.D. Ala. 1996)(insurance agent, who was not a party to the insurance contract, could not be liable for breach of contract or bad faith); *Vari-Care, Inc. v. ITT Hartford Insurance Group*, 1994 U.S.

18

Dist. Lexis 10326 (S.D. Ala. 1994)(bad faith claim could not be maintained against a non-party to the insurance contract).

36.    The fact that Alabama law does not recognize a breach of contract and/or bad faith claim against the insurance agent/broker for alleged breaches of the insurance contract has been recognized as a basis to support a claim of fraudulent joinder. *See Wright v. State Farm Fire & Casualty Co.*, 1997 U.S. Dist. Lexis 2988 (M.D. Ala. 1997). In *Wright*, Judge Albritton refused to remand the case after removal by the defendant alleging that the resident agent had been fraudulently joined as a defendant. *Wright*, 1997 U.S. Dist. Lexis 2988 at *8-9. The plaintiffs' complaint sought to recover against the resident agent for alleged bad faith in the handling of a claim on their insurance policy with State Farm.[3] *Id.* at *2. The Court, citing *Ligon*, recognized that a "bad faith" claim in Alabama is only cognizable "in the context of a breach of an insurance contract." *Id.* at *7. The Court held:

> The tort of bad faith is based upon a breach of the duty of good faith and fair dealing owed by an insurance company to its insured, and in Ligon, the Alabama Supreme Court specifically refused to extend liability to the insurance company's adjuster. Thus, while an adjuster or other agent may commit acts which establish bad faith, it is the company which is liable. Consequently, Mullins (the insurance agent) cannot be held liable for bad faith.

*Id.*

37.    In the present case, the insurance contract is between MEGA and Plaintiffs – the insurer and the insureds. Defendant Milford is not a party to the insurance contract. It is clear from the holdings in *Ligon* and its progeny, that an insurance agent/broker is not a party to the insurance contract issued by an insurance company to the insured. Since an insurance agent/broker is not a party to the insurance contract, causes of action do not exist against the

---

[3]    The plaintiffs also asserted breach of contract and fraud claims against State Farm but not the resident agent.

insurance agent/broker, in this case Defendant Milford, for alleged breach of contract and/or bad faith under Alabama law. Therefore, Milford is not a proper defendant for Plaintiffs' breach of contract claim or bad faith claim. Accordingly, there is no possibility that Plaintiffs can establish a breach of contract or bad faith claim against Defendant Milford.

      **E.**    **Plaintiffs Cannot Establish Outrage.**

    38.    Plaintiffs assert a claim for outrage against Defendants, including Defendant Milford. In *American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980), the Alabama Supreme Court held that a plaintiff must establish: (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. Specifically, in *Inmon*, in defining the level of extreme conduct necessary to support a claim for outrage, the Court stated "[t]he emotional distress [resulting from the conduct] must be so severe that no reasonable person could be expected to endure it. The recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme . . . . by extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon*, 394 So. 2d at 365 (citations omitted).

    39.    In the present case, Plaintiffs admittedly received the insurance certificate, the Exclusionary Endorsement and correspondence from MEGA, which outlined the coverage's terms, conditions, benefits and exclusions. As discussed above, the clear language contained in those documents shows that Plaintiffs' fraud and suppression claims against Milford have no merit, primarily because Plaintiffs could not have reasonably relied on Milford's alleged misrepresentations or suppression of material fact. Plaintiffs' claims against Milford for breach

20

of contract and bad faith also cannot be established under Alabama law.   Moreover, Plaintiffs

had a 10-day right to examine the certificate upon receipt, and if not satisfied that it met their

insurance needs, they could have, within that timeframe, cancelled the coverage, received a

refund of all premiums paid, and had the certificate treated as if it had never been issued.

Plaintiffs did not take advantage of that privilege.   There simply is no basis for any claim under

Alabama law that Milford's alleged misconduct was "so outrageous in character and so extreme

in degree as to go beyond all possible bounds of decency," or could be "regarded as atrocious

and utterly intolerable in a civilized society."   Plaintiffs cannot establish their claim for outrage

against Defendant Milford.

### F.    Plaintiffs' Outrage Claim is Barred by the Statute of Limitations.

40.    The Alabama Supreme Court's strong language in *Archie v. Enterprise Hospital*

*& Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987), suggests that all outrage claims are governed

by the two-year statute of limitations found in Ala. Code § 6-2-38.  The Court said as much in

*Jenkins v. United States Fidelity & Guaranty Co.*, 698 So. 2d 765, 768 n.5 (Ala. 1997).

Plaintiffs' claims for outrage stem from the alleged misrepresentations and/or suppression of

material fact made by Milford at the time Plaintiffs applied for the MEGA insurance certificate.

Plaintiffs applied for and received their insurance certificate in 2002.   Plaintiffs did not bring

this claim within the ensuing two-year period.   Consequently, Plaintiffs' claim against

Defendant Milford for outrage is barred by the expiration of the two-year statute of limitations.

### CONCLUSION

This Court has jurisdiction in this case.  As a matter of law, there is no possibility that

Plaintiffs can establish their causes of action against Defendant Milford, for the reasons outlined

herein.   Consequently, Milford has been fraudulently joined to this lawsuit and is due to be

dismissed. Disregarding the residency of Milford, there is complete diversity among Plaintiffs and the remaining defendant, MEGA. In addition, MEGA has shown that the amount in controversy for federal diversity jurisdiction is satisfied.

WHEREFORE, premises considered, MEGA prays that the above-referenced cause now pending against it in the Circuit Court of Coffee County, Alabama, be removed to the United States District Court for the Middle District of Alabama, Southern Division and that this Court assume jurisdiction of this case as provided by law.

JAMES W. LAMPKIN II (LAMPJ7474)
PAMELA A. MOORE (MOORP5421)
Attorneys for Defendant
The MEGA Life and Health Insurance Company

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel for Plaintiffs via Federal Express, properly addressed as follows:

Gary D. Bradshaw, Esq.
210 E. Grubbs Ave.
Enterprise, AL 36330

Done this 11th day of November, 2005.

COUNSEL

22