IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM MEADOWS AND JEANIE MEADOWS, | * * * | |
| Plaintiffs, | * * | |
| vs. | * * | CASE NO. 1:05cv1091-F |
| THE MEGA LIFE AND HEALTH INSURANCE COMPANY, AND ITS AGENT, MICHAEL JOSHUA MILFORD, ET AL., | * * * * * | |
| Defendants. | * | |

**DEFENDANT MICHAEL JOSHUA MILFORD'S MOTION TO DISMISS
AND SUPPORTING BRIEF**

COMES NOW defendant, Michael Joshua Milford ("Milford"), by and through his undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and files this motion to dismiss Plaintiffs' Complaint for failure to state claims upon which relief can be granted, and in support hereof states as follows[1]:

**PRELIMINARY STATEMENT**

1.    The cornerstone allegations in Plaintiffs' Complaint are that the Defendants, including Milford while acting as an agent for Defendant The MEGA Life and Health Insurance Company ("MEGA"), made certain point-of-sale fraudulent misrepresentations and/or suppressions of material fact with regard to a certain health insurance certificate issued by MEGA to Plaintiffs, and breached that contract of insurance, acted in bad faith and committed

---

[1]    Milford specifically reserves and does not waive the other defenses that are available pursuant to Rule 12 of the Federal Rules of Civil Procedure.

the tort of outrage in handling claims submitted under the insurance certificate. The allegations pled by Plaintiffs, however, cannot support any of those alleged claims against Milford. Thus, the Plaintiffs' claims against Milford have no merit and should be dismissed accordingly.

## FACTUAL BACKGROUND

2.  In their Complaint, Plaintiffs assert that on or about March 12, 2002, Milford visited them and "wrote up" an application for an insurance certificate to be issued by MEGA for the benefit of Plaintiffs. Exhibit A, Complaint at ¶ 6; Exhibit B, enrollment application. Plaintiffs provided certain medical information on their enrollment application, as requested. Exhibit B. In addition, Plaintiffs assert that at the time of their insurance application, they informed Milford of certain medical conditions and were assured by Milford that any exclusionary endorsement issued with the MEGA insurance certificate would be lifted or rescinded after two years from the inception of the certificate. Exhibit A, Complaint at ¶¶ 6-7. Plaintiffs allege that Milford's representation about the lifting of the exclusionary endorsement was fraudulent. Exhibit A, Complaint at Counts III - V. Plaintiffs also allege claims against Milford for breach of the contract of insurance, bad faith, and outrage. Exhibit A, Complaint at Counts I, II and VI.

3.  Furthermore, Plaintiffs assert that they received a letter dated May 9, 2002, from MEGA, wherein they were informed of acceptance for coverage effective May 7, 2002, the issuance of insurance certificate no. 053301047, and the issuance of an Exclusionary Endorsement to the coverage (based on the medical information provided at the time of application), and along with that letter, were provided the insurance certificate and Exclusionary Endorsement. Exhibit A, Complaint at ¶¶ 9-12; Exhibit C, insurance certificate (the enrollment application is a part of the certificate); Exhibit D, Exclusionary Endorsement (also a part of the

certificate); Exhibit E, May 9, 2002 letter. The May 9, 2002 letter also, among other things, requested that Mr. Meadows read the enclosed coverage of insurance carefully and explained <u>in bold print</u> that "**Based on medical information received, it was necessary for us to attach an Exclusionary Endorsement to your Coverage of Insurance**." Exhibit E. The Endorsement to the Plaintiffs' Certificate provides that there is no coverage or benefits provided for losses due to the any disease and/or disorder of the heart and/or circulatory system on Plaintiff William V. Meadows, and that there is no coverage or benefits provided for losses due to any disorder and/or diseases of the urinary system on Jeanie L. Meadows. Exhibit D.

    4.    According to the definition of Pre-Existing Condition in the insurance certificate:

> **Pre-Existing Condition** means a Medical Condition, Sickness or Injury <u>not excluded by name</u> or <u>specific description</u> for which:
>
> 1.    Medical Advice, Consultation, or Treatment was recommended by or received from a Physician within a one year period prior to the Effective Date of Coverage; or
>
> 2.    Symptoms existed which would cause an ordinarily prudent person to seek diagnosis, care or treatment within the one year period before the Effective Date of Coverage.

Exhibit C, Amendatory Endorsement (underlined emphasis added).

    5.    Given that Plaintiffs' medical conditions were specifically named and excluded by the Exclusionary Endorsement attached to the Certificate at the time of issue, those conditions did not meet the above-quoted definition of a "Pre-Existing Condition" and the provisions regarding a Pre-Existing Condition did not apply. The May 9, 2002 letter from MEGA, which Plaintiffs admittedly received when the coverage was approved by MEGA (see Exhibit A, Complaint at ¶¶ 9-10; Exhibit E), provided and explained the Exclusionary Endorsement. Exhibit D. Plaintiffs were advised in that letter that depending on the condition, those

exclusions may be reconsidered in one year. Exhibit E. The letter also advised that a written request for removal, along with any medical evidence which may be available at the time which relates to the excluded conditions, were required. Exhibit E.

      6.      The insurance certificate also includes a provision for a 10-day right to examine the certificate, whereby if the insured is not satisfied that the coverage meets his or her insurance needs, the certificate may be returned within 10 days after receipt, after which the coverage would be cancelled as of the Certificate Date, all premiums paid would be refunded, and the certificate would be treated as if it had never been issued. Exhibit C, Important Notice about Statements in the Enrollment Application. Plaintiffs did not take advantage of that provision.

      7.      On a procedural note, with respect to Exhibits B through E to this motion, Milford submits that attaching those documents to this motion to dismiss does not convert this motion into a motion for summary judgment, as evidenced by applicable federal law in this Circuit and other circuits (as well as Alabama law). The attached documents are referred to in the Complaint, admittedly received by the Plaintiffs, and are central to the Plaintiffs' claims. Milford may therefore submit an authentic copy of those documents to this Court to be considered on a motion to dismiss pursuant to Rule 12(b)(6). *See, e.g., Horsley v. Feldt, et al.*, 304 F.3d 1125 (11th Cir. 2002)(a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment if the attached document is central to the plaintiff's claim and undisputed); *Fondren v. United States of America*, 2003 U.S. Dist. LEXIS 10269 (M.D. Ala. 2003)(where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claims, the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the attachment by defendant to the motion to dismiss will not require conversion of the motion into a motion for

summary judgment); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997)(citing authorities from the First, Second, Third, Fourth, Sixth, Ninth and Eleventh Circuits; "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."); *Wright v. Associated Insurance Cos.*, 29 F.3d 1244 (7th Cir. 1994)(documents attached to a motion to dismiss are considered part of the pleadings if referred to in plaintiff's complaint and are central to his or her claim); *Newson v. Protective Industrial Insurance Co. of Alabama*, 890 So. 2d 81 (Ala. 2003)(if a plaintiff does not incorporate by reference or attach a document to his complaint, but the document is referred to in the complaint and is central to the plaintiff's claims, a defendant may submit an indisputably authentic copy to be considered on a motion to dismiss; and facts contained in that document may also be considered along with the facts alleged in the complaint); *Donoghue v. American National Insurance Co., et al.*, 838 So. 2d 1032 (Ala. 2002)(the court refused to treat defendant's motion to dismiss as a motion for summary judgment, since the complaint specifically referenced the insurance policy and the purchase and substance of the policy served as the foundation for plaintiff's claims).

8.   As will be demonstrated below, a review of the Plaintiffs' Complaint, documents referenced therein and relied upon by Plaintiffs, as well as applicable law that governs Plaintiffs' claims, shows that Plaintiffs have failed to state claims against Milford upon which relief can be granted.

## ARGUMENT AND AUTHORITIES

**A.    Plaintiffs' Fraud Claim Should be Dismissed.**

9.    Plaintiffs assert that when they applied for a MEGA insurance certificate on March 12, 2002, Milford told them that any exclusionary endorsement issued with the certificate would be lifted or rescinded after two years from the inception of the certificate, which was a fraudulent representation. Exhibit A, Complaint at ¶¶ 6-7, Counts III and IV.

10.    Plaintiffs must present substantial evidence of each of the following elements to establish their fraudulent misrepresentation claim against Milford:  "(1) that [Milford] made a false representation; (2) of a material existing fact; (3) on which [Plaintiffs] reasonably relied; and (4) which proximately caused injury or damage to [Plaintiffs]"(citation omitted). *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1196 (Ala. 2001).

11.    In *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997), the Alabama Supreme Court held that "the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost*, 693 So. 2d at 421. The Court termed that standard as the "reasonable reliance" standard. That is, to recover in a fraud action, a plaintiff must prove that he or she reasonably relied on the defendant's alleged misrepresentation. Under Alabama law, a contracting party has an affirmative duty to read the contracts and related legal documents they sign or receive. *Id.* The Eleventh Circuit Court of Appeals has recognized this "duty to read" requirement:

> … Alabama law imposes upon a party the duty to read and inspect any document that might affect that person's legal rights or liabilities. It must be said that the receipt of such a document would "provoke inquiry by a person of ordinary prudence," and that

> inquiry necessarily would consist of actually reading the document. This obligation is part of the "concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests," as stated in *Torres*. If the facts constituting an alleged fraud claim would be apparent from simply reading a given document, a plaintiff's failure to do so renders his reliance on previous misrepresentations unreasonable under the circumstances.

*Ramp Operations, Inc. v. Reliance Ins. Co.*, 805 F.2d 1552, 1556 (11th Cir. 1986).

12. Here, Plaintiffs could not have reasonably relied on Milford's alleged fraudulent misrepresentations relating to the benefits, particularly the possible exclusions of the MEGA insurance certificate, because of the content of the documents provided to Plaintiffs by MEGA. That is, Plaintiffs admittedly received a May 9, 2002 letter and enclosed documents from MEGA, accepting Plaintiffs for coverage and providing the insurance certificate (including the enrollment application) and the Exclusionary Endorsement to the coverage. Exhibit A, Complaint at ¶¶ 9-12; Exhibits C-E. MEGA, in its May 9 letter, requested that Mr. Meadows read the enclosed Coverage of Insurance carefully and call MEGA's toll-free number if he had any questions, so that when he called upon the benefits provided, he could be confident that they would be paid promptly and accurately. Exhibit E. The letter also explained in clear, bolded language that an Exclusionary Endorsement had been attached to the coverage based on the medical information provided by Plaintiffs. Exhibit E. Furthermore, the letter outlined the period of time and procedure for reconsideration of those exclusions. Exhibit E. Plaintiffs at that time did not question or challenge the terms or scope of coverage in any fashion. Plaintiffs also did not exercise their right to cancel the certificate within 10 days of receipt.

13. The documents Plaintiffs received from MEGA contradicted the alleged oral misrepresentations made by Milford. Plaintiffs do not contend that they were not in possession of those documents from their receipt of them in May of 2002 until Plaintiffs filed this lawsuit, such that they could have reviewed them at any time. Plaintiffs were requested to and have not

asserted that they did not or could not read and understand the documents received from MEGA when the coverage was issued. Plaintiffs in fact in their Complaint discuss the contents of those documents. Exhibit A, Complaint at ¶¶ 9–12. Plaintiffs nevertheless had an affirmative duty to read those documents, which undisputedly contained the terms, conditions, benefits and exclusions of the insurance coverage that had been issued to them. Plaintiffs do not contend that those documents were ambiguous. Thus, even if, *arguendo*, the possible benefits exclusion based on existing medical conditions had not been fully explained by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate, including the Exclusionary Endorsement, when they received those documents along with the May 9 letter from MEGA. Such documents put Plaintiffs on notice that, contrary to Milford's alleged misrepresentation, Plaintiffs' excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy." Instead, Plaintiffs knew or should have known, from the documents received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions. As a result, Plaintiffs' reliance on Milford's alleged misrepresentations was not reasonable. Consequently, Plaintiffs cannot establish each of the requisite elements of their fraudulent misrepresentation claims against Milford, because Plaintiffs cannot show that they reasonably relied on Milford's alleged misrepresentations. Accordingly, those claims against Milford should be dismissed.

   **B.**  **<u>Plaintiffs' Suppression Claim Should be Dismissed</u>.**

   14.  Plaintiffs assert that Defendants, including Milford, suppressed material facts relating to the benefits, particularly the exclusions of the MEGA insurance certificate. Exhibit

A, Complaint at Count V. In order to establish a prima facie claim of fraudulent suppression, a plaintiff must produce substantial evidence establishing each of the following elements: "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result." *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 323-24 (Ala. 1999)(citations omitted). It is clear that a plaintiff's reasonable reliance is an essential element of a suppression claim. *See Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 744-45 (Ala. 2002)(quoting *Ex parte Household Retail Services, Inc.*, 744 So. 2d 871, 879 (Ala. 1999)); *Liberty National Life Insurance Co. v. Sherrill*, 551 So. 2d 272, 273 (Ala. 1989); *see also Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997) (referring to the reasonable reliance standard).

15.     Thus, to sustain a claim of fraudulent suppression, a plaintiff must prove, among other elements, the concealment or suppression of material facts by the defendant. *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1197 (Ala. 2001)(quoting *Foremost Insurance Co. v. Parham*, 693 So. 2d 409, 423 (Ala. 1997)). "Where the record indicates that the information alleged to have been suppressed was in fact disclosed, and there are no special circumstances affecting the plaintiff's capacity to comprehend, the plaintiff cannot recover for suppression." *Ex parte Alfa Mutual Fire Insurance Co.*, 742 So. 2d 1237, 1243 (Ala. 1999)(citation omitted). "In other words, plain disclosure to a person competent in intelligence and background to understand the disclosure is the legal antithesis of suppression, by definition." *Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 746 (Ala. 2002).

16.     Plaintiffs cannot show any reasonable reliance on the alleged suppression of material facts or in fact, that Milford even suppressed material facts related to the terms, conditions or benefits of the insurance, such as the possible exclusions for existing medical conditions.  As discussed in the preceding section of this motion, Plaintiffs do not assert that they did not receive the May 9, 2002 letter from MEGA, their MEGA insurance certificate, or the Exclusionary Endorsement, and in fact in their Complaint, admit receipt of and refer to language from those documents.  Exhibit A, Complaint at ¶¶ 9–12; Exhibits C-E.   Plaintiffs had in their possession documents that provided the information allegedly suppressed by Milford.  There is no allegation that MEGA and/or Milford took any affirmative action to prevent Plaintiffs from discovering the facts that were allegedly suppressed from them.  Also, Plaintiffs do not contend that they did not or could not read and understand those documents or that those documents did not clearly outline the terms, provisions, benefits and exclusions of the coverage.  Plaintiffs in fact had an affirmative duty to read those documents.  Therefore, even if, *arguendo*, the possible benefits exclusion based on existing medical conditions had not been fully disclosed by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate, including the Exclusionary Endorsement, when they received those documents along with the May 9 letter from MEGA.  Those documents put Plaintiffs on notice that their excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy."  Instead, Plaintiffs knew or should have known, from the documents received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions.  As a result, Plaintiffs' reliance on the alleged

suppression by Milford, when Plaintiffs had in their possession documents from MEGA that provided the information allegedly suppressed, was not reasonable. Consequently, Plaintiffs' fraudulent suppression claim against Milford should be dismissed.

      **C.**      **Plaintiffs' Fraud and Suppression Claims are Barred by the Statute of Limitations.**

      17.      The statute of limitations for Plaintiffs' fraud and suppression claims is two years. *See* Ala. Code §§ 6-2-3, 6-2-38; *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001)(claims alleging fraudulent suppression are subject to a two-year statute of limitation); *Foremost Insurance Co., v. Parham*, 693 So. 2d 409, 417 (Ala. 1997)(same); *Casassa v. Liberty Life Insurance Co.*, 949 F. Supp. 825, 828 (M.D. Ala. 1996) (under Alabama law, fraudulent misrepresentation and suppression are subject to a two-year statute of limitations); *Kelly v. Connecticut Mutual Life Insurance Co.*, 628 So. 2d 454, 458, 460 (Ala. 1993) (same).

      18.      The statute of limitations for fraud and suppression claims is subject to the "discovery rule," and does not begin to run until the plaintiff discovers or should have discovered the fraud. *See* Ala. Code § 6-2-3.[2] The Supreme Court of Alabama has revisited the issue of the discovery rule in the context of the statute of limitations and held that under certain circumstances, the issue could be decided as a matter of law. In *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997)(involving fraudulent misrepresentation and fraudulent suppression), the Court found that the plaintiffs should have discovered the defendant's misrepresentation when the plaintiffs signed and received their sales documents. *Foremost*, 693

---

[2]     Under Alabama law, the statute of limitations begins to run when the cause of action "accrues," which occurs "as soon as the party in whose favor it arises is entitled to maintain a cause of action thereon," even if the "full amount of damages" is not apparent at the time the legal injury occurs. *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 114 (Ala. 2003).

So. 2d at 422. Because the plaintiffs received their sales documents more than two years before filing their lawsuit, their misrepresentation claims were barred as a matter of law by the expiration of the applicable two-year statute of limitations. *Id.* The Court noted that the plaintiffs had received documents which, if read or even briefly skimmed, would have put a reasonable person on notice that, contrary to the defendant's representation, they had paid for their first year's coverage. *Id.* at 421-422.

19.     Thus, in *Foremost*, the Alabama Supreme Court re-established that the objective standard for determining the accrual date for a fraud or suppression claim imposes a duty to read documents received in connection with a particular transaction. *Id.* at 421. Therefore, fraud claims accrue upon the earlier of: (1) actual discovery of the alleged fraud; or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms. *Id.* This Court as well as the Alabama Supreme Court has uniformly maintained the application of the *Foremost* standard. *See, e.g., Owens v. Life Insurance Co. of Georgia*, 289 F. Supp. 2d 1319, 1326 (M.D. Ala. 2003); *Alfa Life Insurance Corp. v. Green*, 881 So. 2d 987, 991 (Ala. 2003).

20.     The *Foremost* decision forecloses the possibility of Plaintiffs here avoiding the statute of limitations bar on their fraud and suppression claims against Milford. In their Complaint, Plaintiffs assert that the alleged fraud and/or suppression occurred when Milford sold the MEGA insurance certificate to them, which occurred on March 12, 2002. Exhibit A, Complaint at ¶¶ 6-7, Counts III-V. Plaintiffs also admit that they received a May 9, 2002 letter from MEGA wherein they were notified of MEGA's acceptance of Plaintiffs' application for insurance coverage effective May 7, 2002, and that enclosed therewith was the insurance certificate issued to them, along with an explanation, <u>in</u> <u>bold</u> <u>print</u>, that based on the medical

information provided, an Exclusionary Endorsement had been attached to the coverage. Exhibit A, Complaint at ¶¶ 6-7, 9-12; Exhibits C-E. Therefore, the Plaintiffs, more than two years before they filed this lawsuit, received documents that would have put them on notice that, contrary to Milford's alleged misrepresentation and/or suppression, Plaintiffs' excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy." Instead, Plaintiffs knew or should have known, from the documents received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions.

21.    Plaintiffs undisputedly had in their possession documents that contradicted the alleged oral misrepresentations made by Milford and provided the information allegedly suppressed. Thus, even if, *arguendo*, the possible exclusion of benefits based on existing medical conditions had not been fully disclosed or explained by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate, including the Exclusionary Endorsement, when they received those documents along with the May 9, 2002 letter from MEGA. Plaintiffs do not contend that they were incapable of reading and understanding those documents or that the documents were ambiguous, and in fact, in their Complaint refer to language from those documents. Exhibit A, Complaint at ¶¶ 9–12. Accordingly, it is reasonable to presume that Plaintiffs were capable of reading and understanding those documents in 2002 when they were issued and provided to Plaintiffs. Plaintiffs as a result, in 2002, became aware of the fraud allegedly committed, and the misrepresentations and/or suppression allegedly made, by Milford.

22.     Therefore, under the *Foremost* objective standard, Plaintiffs should have discovered the alleged fraud or suppression, if any, in 2002 when they purchased the coverage and received MEGA's May 9 letter, the insurance certificate, and the Exclusionary Endorsement. The two-year statute of limitations commenced running at that time. *See Auto Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001)("The limitations period begins to run when the plaintiff was privy to facts 'which would provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have lead to the discovery of the fraud.'")(citation omitted). As such, the statute of limitations for Plaintiffs' fraud and suppression claims against Milford began running in 2002 and expired no later than 2004, which is more than two years before Plaintiffs filed this lawsuit. As a result, Plaintiffs' claims against Milford are barred by the two-year statute of limitations and should be dismissed.

### D.     Plaintiffs' Breach of Contract and Bad Faith Claims Should be Dismissed.

23.     Plaintiffs assert claims for breach of contract and bad faith against Defendants, including Milford. Exhibit A, Complaint at Counts I and II. The Alabama Supreme Court has specifically held that a plaintiff cannot pursue breach of contract and/or bad faith claims against an insurance agent arising out of alleged breaches of the insurance contract. In *Ligon Furniture Co. v. O.M. Hughes Insurance, Inc.*, 551 So. 2d 283 (Ala. 1989), the Alabama Supreme Court affirmed summary judgment against the plaintiff on claims against an insurance agent. The Court held that Hughes (the agent) was not a party to the insurance contract; thus, the plaintiff could not recover on a breach of contract claim. *Ligon*, 551 So. 2d at 285. Addressing a bad faith claim, the Court affirmed summary judgment in favor of the agent because "bad faith" claims only apply to parties to the insurance contract. *Id*. Four years later, the Alabama Supreme Court reaffirmed its ruling in *Ligon* that a breach of contract claim does not exist

against a broker who placed insurance coverage for the plaintiff. *See Pate v. Rollison Logging Equipment, Inc.*, 628 So. 2d 337 (Ala. 1993). In *Pate*, the Court held that "Anderson (the broker) cannot be liable for breach of contract, because he acted as a broker to place the insurance and was not a party." *Pate*, 628 So. 2d at 343.

24. Federal courts in Alabama have also addressed the issue of breach of contract and bad faith claims against insurance agents/brokers and concluded that *Ligon* controlled the issue. *See Bullock v. United Benefit Insurance Co.*, 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001)(finding that the insurance agent was not a proper defendant for a breach of contract claim by the insured); *McDonald v. Integon General Insurance Co.*, 1996 U.S. Dist. Lexis 16890 (S.D. Ala. 1996)(insurance agent, who was not a party to the insurance contract, could not be liable for breach of contract or bad faith); *Vari-Care, Inc. v. ITT Hartford Insurance Group*, 1994 U.S. Dist. Lexis 10326 (S.D. Ala. 1994)(bad faith claim could not be maintained against a non-party to the insurance contract).

25. In the present case, the insurance contract is between MEGA and Plaintiffs – the insurer and the insureds. Milford is not a party to the insurance contract. It is clear from the holdings in *Ligon* and its progeny, that an insurance agent/broker is not a party to the insurance contract issued by an insurance company to the insured. Since an insurance agent/broker is not a party to the insurance contract, causes of action do not exist against the insurance agent/broker, in this case Milford, for alleged breach of contract and/or bad faith under Alabama law. Therefore, Milford is not a proper defendant for Plaintiffs' breach of contract claim or bad faith claim. Accordingly, Milford's motion to dismiss these claims should be granted.

**E.     Plaintiffs' Outrage Claim Should be Dismissed.**

26.     Plaintiffs assert a claim for outrage against Defendants, including Milford. Exhibit A, Complaint at Count VI. In *American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980), the Alabama Supreme Court held that a plaintiff must establish: (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. Specifically, in *Inmon*, in defining the level of extreme conduct necessary to support a claim for outrage, the Court stated "[t]he emotional distress [resulting from the conduct] must be so severe that no reasonable person could be expected to endure it. The recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme . . . by extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon*, 394 So. 2d at 365 (citations omitted).

27.     In the present case, Plaintiffs admittedly received the insurance certificate, the Exclusionary Endorsement and correspondence from MEGA, which outlined the coverage's terms, conditions, benefits and exclusions. As discussed above, the clear language contained in those documents shows that Plaintiffs' fraud and suppression claims against Milford have no merit, primarily because Plaintiffs could not have reasonably relied on Milford's alleged misrepresentations or suppression of material fact, and moreover, those claims are barred by the expiration of the statute of limitations. Plaintiffs' claims against Milford for breach of contract and bad faith also cannot be established under Alabama law. Moreover, Plaintiffs had a 10-day right to examine the certificate upon receipt, and if not satisfied that it met their insurance needs, they could have, within that timeframe, cancelled the coverage, received a refund of all

premiums paid, and had the certificate treated as if it had never been issued. Plaintiffs did not take advantage of the privilege. There simply is no basis for any claim under Alabama law that Milford's alleged misconduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency," or could be "regarded as atrocious and utterly intolerable in a civilized society." Plaintiffs' claim for outrage against Milford should be dismissed.

### F.  Plaintiffs' Outrage Claim is Barred by the Statute of Limitations.

28.  The Alabama Supreme Court's strong language in *Archie v. Enterprise Hospital & Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987), suggests that all outrage claims are governed by the two-year statute of limitations found in Ala. Code § 6-2-38. The Court said as much in *Jenkins v. United States Fidelity & Guaranty Co.*, 698 So. 2d 765, 768 n.5 (Ala. 1997). Plaintiffs' claim for outrage stems from the alleged misrepresentations and/or suppression of material fact made by Milford at the time Plaintiffs applied for the MEGA insurance certificate. Plaintiffs applied for and received their insurance certificate and attached Exclusionary Endorsement in 2002. Plaintiffs did not bring this claim within the ensuing two-year period. Consequently, Plaintiffs' claim against Milford for outrage is barred by the expiration of the two-year statute of limitations and should be dismissed.

### CONCLUSION

For the reasons outlined herein, Milford respectfully requests that this Court grant his motion to dismiss the Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Milford also requests such other and further relief to which he is justly entitled.

                    */s/ Pamela A. Moore*_____
JAMES W. LAMPKIN II (LAMPJ7474)
PAMELA A. MOORE (MOORP5421)
Attorneys for Defendant Michael Joshua Milford

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

     I hereby certify that on December 21, 2005, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

    Gary D. Bradshaw, Esq.
    P.O. Box 311412
    Enterprise, AL 36331-1412
    gbradshaw@adelphia.net

    Steven E. Blair, Esq.
    P.O. Box 310843
    Enterprise, AL 36331-0843
    sblair506@hotmail.com

    Dwain D. Hartwick, Esq.
    P.O. Box 311526
    Enterprise, AL 36331-1526
    dhartwick@ala.net

    Wilmer R. Tharpe, Esq.
    621 W. State Highway 92
    Newton, AL 36352-7935
    wrtharpe@aol.com

                    */s/ Pamela A. Moore*_____
COUNSEL