IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM MEADOWS AND JEANIE MEADOWS, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | CASE NO. 1:05cv1091-F |
| vs. | * | |
| | * | |
| THE MEGA LIFE AND HEALTH INSURANCE COMPANY, AND ITS AGENT, MICHAEL JOSHUA MILFORD, ET AL., | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |

**THE MEGA LIFE AND HEALTH INSURANCE COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR REMAND AND COSTS**

COMES NOW, Defendant The MEGA Life and Health Insurance Company ("MEGA"), by and through its undersigned counsel, and submits this response in opposition to the Plaintiffs' Motion for Remand and Costs, and in support hereof says as follows:

1.      In accordance with 28 U.S.C. §§ 1441 and 1446, on November 14, 2005, MEGA removed this case to this Court pursuant to the provisions of 28 U.S.C. § 1332.  In its Notice of Removal, MEGA demonstrated that the properly joined parties in this case are all residents and citizens (both individual and corporate) of different states, and that the amount in controversy exceeds the jurisdictional requisite of $75,000.00, exclusive of interest and costs.

2.      Plaintiffs, in their brief in support of remand, admit that the amount in controversy is satisfied. (Plaintiffs' brief, p. 2).  Thus, the only issue before this Court is whether MEGA has satisfied the diversity of citizenship requirement for federal diversity jurisdiction.

For the reasons outlined in the Notice of Removal and herein, MEGA should not be deprived of its constitutional right to a federal forum in this case pursuant to Article III of the United States Constitution, notwithstanding the Plaintiffs' position to the contrary.

3.     Initially, with respect to Plaintiffs' argument that the Defendants are subject to *in personam* jurisdiction in Alabama, MEGA does not dispute that assertion. MEGA has in fact, in this Court, filed a Notice of Removal and an Answer, and Defendant Michael Joshua Milford ("Milford") has filed a Motion to Dismiss, and therefore have submitted themselves to the personal jurisdiction of this Court.

## I.     <u>Milford Has Been Fraudulently Joined to this Lawsuit.</u>

4.     Plaintiffs argue that Milford is a proper defendant because he is jointly and severally liable for the alleged wrongs inflicted upon the Plaintiffs, that Milford acted as an extension of MEGA by perpetuating the alleged wrongful acts in Alabama as MEGA's agent, and that MEGA may be liable for Milford's alleged misconduct under the doctrine of respondeat superior. Plaintiffs submit that this Court does not have diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs are residents of the State of Alabama as is Milford. However, MEGA submits that this action is removable to this Court, notwithstanding the joinder of Milford, because Plaintiffs have fraudulently and improperly joined Milford in this action in an effort to defeat diversity of citizenship. Accordingly, as shown in the Notice of Removal and herein, Milford is due to be dismissed, and the naming of Milford as a defendant in this action does not affect this Court's jurisdiction.

5.     As for the doctrine of fraudulent joinder, MEGA must and has shown that there is no possibility that Plaintiffs would be able to establish a cause of action against Milford in state court. *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981); *see also Wakeland*

2

*v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213 (S.D. Ala. 1998)(certain defendants were fraudulently joined because there was "no possibility" that plaintiff could establish any cause of action against them).  To determine whether a resident defendant has been fraudulently joined, district courts should apply a standard similar to that used for a ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b).  *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)(citations omitted).

6.    A review of Alabama law that governs Plaintiffs' claims shows that Plaintiffs cannot establish any of their causes of action against Milford in state court.  MEGA's arguments in its Notice of Removal, which demonstrate cause-of-action by cause-of-action why Plaintiffs cannot establish any of their claims against Milford, are not disputed in Plaintiffs' remand brief. MEGA also submitted supporting documentation, attached as exhibits to its Notice of Removal, to show that there is no possibility that Plaintiffs would be able to establish any of their claims against Milford.

7.    The cornerstone allegations in Plaintiffs' Complaint are that Defendants, including Milford, made certain point-of-sale fraudulent misrepresentations and/or suppression of material facts with regard to a certain health insurance certificate issued by MEGA to Plaintiffs, and breached the contract of insurance, acted in bad faith and committed the tort of outrage in handling claims submitted under the insurance certificate.

A.    **Plaintiffs Cannot Establish Fraud.**

8.    Plaintiffs assert that on or about March 12, 2002, they applied for health insurance coverage from MEGA, which was sold to them by Milford.  Exhibit A, Complaint at ¶ 6. Plaintiffs further assert that at that time, Milford told them that any exclusionary endorsement issued with the certificate would be lifted or rescinded after two years from the inception of the

certificate.  Exhibit A, Complaint at ¶ 7.  Plaintiffs also assert that they received a letter dated May 9, 2002, from MEGA, whereby they were accepted for coverage and informed of an Exclusionary Endorsement to the coverage.  Exhibit A, Complaint at ¶¶ 9-10.  Plaintiffs allege that Milford's representation was fraudulent.  Exhibit A, Complaint at Counts III and IV.

9.      On March 12, 2002, Plaintiffs applied for a MEGA Health Choice Benefit Plan, which was sold by independent contractor agent Milford.   Plaintiffs provided certain medical information on their enrollment application, as requested. (Copy of application attached as Exhibit B).   MEGA issued insurance certificate number 053301047 to Plaintiffs, with an effective date of May 7, 2002.  (Copy of insurance certificate attached as Exhibit C – the enrollment application is a part of the insurance certificate).   Based on medical information received from Plaintiffs, it was necessary for MEGA to attach an Exclusionary Endorsement to Plaintiffs' coverage of insurance.  (Copy of Exclusionary Endorsement attached as Exhibit D – it also is a part of the insurance certificate).   A letter dated May 9, 2002, was sent from MEGA to Plaintiff William Meadows, via Priority Mail, which, among other things, informed of the acceptance for coverage effective May 7, 2002, requested that Mr. Meadows read the coverage of insurance carefully, and enclosed the enrollment application and the insurance certificate. (Copy of letter attached as Exhibit E).  In that letter, MEGA explained in bold print that "**Based on medical information received, it was necessary for us to attach an Exclusionary Endorsement to your Coverage of Insurance**."   (Exhibit E).   The Endorsement to the Plaintiffs' Certificate provides that there is no coverage or benefits provided for losses due to any disease and/or disorder of the heart and/or circulatory system on Plaintiff William V. Meadows, and that there is no coverage or benefits provided for losses due to any disorder and/or diseases

of the urinary system on Jeanie L. Meadows (Exhibit D).   The Endorsement does not contain

any language that limits the excluded medical conditions to a period of two years. (Exhibit D).

10.     According to the definition of Pre-Existing Condition in the insurance certificate:

**Pre-Existing Condition** means a Medical Condition, Sickness or Injury
<u>not excluded by name</u> or <u>specific description</u> for which:

1.     Medical Advice, Consultation, or Treatment was recommended by
or received from a Physician within a one year period prior to the
Effective Date of Coverage; or

2.     Symptoms existed which would cause an ordinarily prudent person
to seek diagnosis, care or treatment within the one year period
before the Effective Date of Coverage.

(Exhibit C, Amendatory Endorsement (underlined emphasis added)).

11.     Given that Plaintiffs' medical conditions were specifically named and excluded

by the Exclusionary Endorsement attached to the Certificate at the time of issue, those conditions

do not meet the above-quoted definition of a "Pre-Existing Condition" and the provisions

regarding a Pre-Existing Condition do not apply.  The May 9, 2002 letter from MEGA, which

Plaintiffs admittedly received when the coverage was approved by MEGA (Exhibit A,

Complaint at ¶¶ 9-10; Exhibit E), provided and explained the Exclusionary Endorsement.

(Exhibit D).   In that letter, Plaintiffs were advised that depending on the condition, those

exclusions may be reconsidered in one year.  (Exhibit E).  The letter also advised that a written

request for removal, along with any medical evidence which may be available at the time which

relates to the excluded conditions, were required.  (Exhibit E).   Moreover, the letter advised that

to request the reasons for MEGA's coverage decision (which included the issuance of the

Exclusionary Endorsement), Plaintiffs should send a written request to MEGA within 90 days of

the date of the letter.  (Exhibit E).

12.    The insurance certificate also includes a provision for a 10-day right to examine the certificate, whereby if the insured is not satisfied that the coverage meets his or her insurance needs, the certificate may be returned within 10 days after receipt, after which the coverage would be cancelled as of the Certificate Date, all premiums paid would be refunded, and the certificate would be treated as if it had never been issued. (Exhibit C, Important Notice about Statements in the Enrollment Application).   Plaintiffs did not take advantage of that provision.

13.    Plaintiffs must present substantial evidence of each of the following elements to establish their fraudulent misrepresentation claim against Milford:   "(1) that [Milford] made a false representation; (2) of a material existing fact; (3) on which [Plaintiffs] reasonably relied; and (4) which proximately caused injury or damage to [Plaintiffs]"(citation omitted).   *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1196 (Ala. 2001).

14.    In *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997), the Alabama Supreme Court held that "the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost*, 693 So. 2d at 421.   The Court termed that standard as the "reasonable reliance" standard.   That is, to recover in a fraud action, a plaintiff must prove that he or she reasonably relied on the defendant's alleged misrepresentation.   Under Alabama law, a contracting party has an affirmative duty to read the contracts and related legal documents they sign or receive.   *Id.*   The Eleventh Circuit Court of Appeals has recognized this "duty to read" requirement:

> … Alabama law imposes upon a party the duty to read and inspect any document which might affect that person's legal rights or liabilities. It must be said that the receipt of such a document would "provoke inquiry by a person of ordinary

> prudence," and that inquiry necessarily would consist of actually reading the
> document. This obligation is part of the "concomitant duty on the part of the plaintiffs
> to exercise some measure of precaution to safeguard their interests," as stated in
> *Torres*. If the facts constituting an alleged fraud claim would be apparent from
> simply reading a given document, a plaintiff's failure to do so renders his reliance on
> previous misrepresentations unreasonable under the circumstances.

*Ramp Operations, Inc. v. Reliance Ins. Co.*, 805 F.2d 1552, 1556 (11th Cir. 1986).

15.    Here, Plaintiffs could not have reasonably relied on Milford's alleged fraudulent

misrepresentations relating to the benefits, particularly the possible exclusions of the MEGA

insurance certificate, because of the content of the documents provided to Plaintiffs by MEGA.

That is, Plaintiffs undisputedly received a May 9, 2002 letter and enclosed documents from

MEGA, accepting Plaintiffs for coverage and providing the insurance certificate (including the

enrollment application) and the Exclusionary Endorsement.   (Exhibit A, Complaint at ¶¶ 9-10;

Exhibits B–E).   MEGA, in its May 9 letter, requested that Mr. Meadows read the enclosed

Coverage of Insurance carefully and call MEGA's toll-free number if he had any questions, so

that when he called upon the benefits provided, he could be confident that they would be paid

promptly and accurately.  (Exhibit E).   That letter also explained in clear, bolded language that

an Exclusionary Endorsement had been attached to the coverage based on the medical

information provided by Plaintiffs.  (Exhibit E).  Furthermore, the letter outlined the period of

time (one year) and procedure for reconsideration of those exclusions.  (Exhibit E).   The letter

also indicated that should Plaintiffs request the reasons for MEGA's coverage decision (which

included the issuance of the Exclusionary Endorsement), Plaintiffs should send a written request

within 90 days of the date of the letter. (Exhibit E).  Plaintiffs did not question or challenge the

terms or scope of coverage in any fashion – either by exercising their right to cancel the

certificate within 10 days of receipt, or by submitting a written request to MEGA within 90 days

of the May 9, 2002 letter requesting the reasons for the coverage decision, or by submitting in

one year a written request for consideration of removal of the exclusions outlined in the Exclusionary Endorsement along with medical evidence related to those conditions.

16.    The documents Plaintiffs received from MEGA contradicted the alleged oral misrepresentations made by Milford.  Plaintiffs do not contend that they were not in possession of those documents from their receipt in May of 2002 until Plaintiffs filed this lawsuit, such that they could have reviewed them at any time.  Plaintiffs were requested to and have not asserted that they did not or could not read and understand the documents received from MEGA when the coverage was issued.  Plaintiffs nevertheless had an affirmative duty to read those documents, which unquestionably contained the terms, conditions, benefits and exclusions of the insurance coverage that had been issued to them.  Plaintiffs do not contend that those documents were vague or ambiguous.  Plaintiffs in fact in their Complaint discuss the contents of those documents.  (Exhibit A, Complaint at ¶¶ 9–12).  Thus, even if, *arguendo*, the possible benefits exclusion based on existing medical conditions had not been fully explained by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate, including the Exclusionary Endorsement, when they received those documents along with the May 9 letter from MEGA.  Such documents put Plaintiffs on notice of the alleged fraud -- that, contrary to Milford's alleged misrepresentation, Plaintiffs' excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy." Instead, Plaintiffs knew or should have known, from the documents received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions.  As a result, Plaintiffs' reliance on Milford's alleged misrepresentations was not

reasonable.   Consequently, Plaintiffs cannot establish each of the requisite elements of their fraudulent misrepresentation claims against Milford, because Plaintiffs cannot show that they reasonably relied on Milford's alleged misrepresentations.    Plaintiffs therefore have no possibility of recovery on those claims against Milford.

        **B.**    <u>**Plaintiffs Cannot Establish Suppression of Material Facts**</u>**.**

     17.    Plaintiffs assert that Defendants, including Milford, suppressed material facts relating to the benefits, particularly as to the exclusions of the MEGA insurance certificate.   In order to establish a prima facie claim of fraudulent suppression, a plaintiff must produce substantial evidence establishing each of the following elements:  "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result."  *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 323-24 (Ala. 1999)(citations omitted).   It is clear that a plaintiff's reasonable reliance is an essential element of a suppression claim.  *See Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 744-45 (Ala. 2002)(quoting *Ex parte Household Retail Services, Inc.*, 744 So. 2d  871, 879 (Ala. 1999)); *Liberty National Life Insurance Co. v. Sherrill*, 551 So. 2d 272, 273 (Ala. 1989); *see also Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997) (referring to the reasonable reliance standard).

     18.    Thus, to sustain a claim of fraudulent suppression, a plaintiff must prove, among other elements, the concealment or suppression of material facts by the defendant.  *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1197 (Ala. 2001)(quoting *Foremost Insurance Co. v. Parham*, 693 So. 2d 409, 423 (Ala. 1997)).  "Where the record indicates that the information

alleged to have been suppressed was in fact disclosed, and there are no special circumstances affecting the plaintiff's capacity to comprehend, the plaintiff cannot recover for suppression." *Ex parte Alfa Mutual Fire Insurance Co.*, 742 So. 2d 1237, 1243 (Ala. 1999)(citation omitted). "In other words, plain disclosure to a person competent in intelligence and background to understand the disclosure is the legal antithesis of suppression, by definition." *Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 746 (Ala. 2002).

19.    Plaintiffs cannot show any reasonable reliance on the alleged suppression of material facts or in fact, that Milford even suppressed material facts related to the terms, conditions or benefits of the insurance, such as the possible exclusions for existing medical conditions.  As discussed in the preceding section of this response, Plaintiffs do not assert that they did not receive the May 9, 2002 letter from MEGA, their MEGA insurance certificate, or the Exclusionary Endorsement, and in fact in their Complaint, admit receipt of and refer to language from those documents.  (Exhibit A, Complaint at ¶¶ 9–12; Exhibits B–E).   Plaintiffs had in their possession documents which provided the information allegedly suppressed by Milford.  There is no allegation that MEGA and/or Milford took any affirmative action to prevent Plaintiffs from discovering the facts that were allegedly suppressed from them.  Also, Plaintiffs do not contend that they did not or could not read and understand those documents or that those documents did not clearly outline the terms, provisions, benefits and exclusions of the coverage.  Plaintiffs in fact had an affirmative duty to read those documents.  Therefore, even if, *arguendo*, the possible benefits exclusion based on existing medical conditions had not been fully disclosed by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate, including the Exclusionary Endorsement, when they received those documents along with the May 9 letter from MEGA.  Such documents put

Plaintiffs on notice that their excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy." Instead, Plaintiffs knew or should have known, from the documents received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions. As a result, Plaintiffs' reliance on the alleged suppression by Milford, when Plaintiffs had in their possession documents from MEGA that provided the information allegedly suppressed, was not reasonable. Consequently, Plaintiffs cannot establish their fraudulent suppression claim against Milford.

      **C.**    **Plaintiffs' Fraud and Suppression Claims are Barred by the Statute of Limitations.**

     20.    Furthermore, MEGA argues that in accordance with *Foremost*, this Court should determine as a matter of law that Plaintiffs should have discovered the alleged fraud or suppression, if any, when they received their insurance certificate and Exclusionary Endorsement in May of 2002. MEGA also argues that if Plaintiffs' fraud and suppression claims are time-barred, there is no possibility that Plaintiffs can establish those claims against Milford, and the Court therefore should find that Milford has been fraudulently joined. *See Owens v. Life Insurance Co. of Georgia,* 289 F. Supp. 2d 1319, 1325 (M.D. Ala. 2003); *Bullock v. United Benefit Insurance Co.*, 165 F. Supp. 2d 1255, 1258 (M.D. Ala. 2001); *Levett v. Independent Life & Accident Insurance Co.*, 814 F. Supp. 1053, 1058 (M.D. Ala. 1993).

     21.    The statute of limitations for Plaintiffs' fraud and suppression claims is two years. *See* Ala. Code §§ 6-2-3, 6-2-38; *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001)(claims alleging fraudulent suppression are subject to a two-year statute of

limitation); *Foremost Insurance Co., v. Parham*, 693 So. 2d 409, 417 (Ala. 1997)(same); *Casassa v. Liberty Life Insurance Co.*, 949 F. Supp. 825, 828 (M.D. Ala. 1996) (under Alabama law, fraudulent misrepresentation and suppression are subject to a two-year statute of limitations); *Kelly v. Connecticut Mutual Life Insurance Co.*, 628 So. 2d 454, 458, 460 (Ala. 1993) (same).

22.     The statute of limitations for fraud and suppression claims is subject to the "discovery rule," and does not begin to run until the plaintiff discovers or should have discovered the fraud. *See* Ala. Code § 6-2-3.[1]   The Supreme Court of Alabama has revisited the issue of the discovery rule in the context of the statute of limitations and held that under certain circumstances, the issue could be decided as a matter of law.  In *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997)(involving fraudulent misrepresentation and fraudulent suppression), the Court found that the plaintiffs should have discovered the defendant's misrepresentation when the plaintiffs signed and received their sales documents.  *Foremost*, 693 So. 2d at 422.  Because the plaintiffs received their sales documents more than two years before filing their lawsuit, their misrepresentation claims were barred as a matter of law by the expiration of the applicable two-year statute of limitations.  *Id.*  The Court noted that the plaintiffs had received documents which, if read or even briefly skimmed, would have put a reasonable person on notice that, contrary to the defendant's representation, they had paid for their first year's coverage.  *Id.* at 421-422.

---

[1]     Under Alabama law, the statute of limitations begins to run when the cause of action "accrues," which occurs "as soon as the party in whose favor it arises is entitled to maintain a cause of action thereon," even if the "full amount of damages" is not apparent at the time the legal injury occurs.  *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 114 (Ala. 2003).

23.     Thus, in *Foremost*, the Alabama Supreme Court re-established that the objective standard for determining the accrual date for a fraud or suppression claim imposes a duty to read documents received in connection with a particular transaction.  *Id.* at 421.  Therefore, fraud claims accrue upon the earlier of:  (1) actual discovery of the alleged fraud; or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms.  *Id.*   This Court as well as the Alabama Supreme Court have uniformly maintained the application of the *Foremost* standard.  *See, e.g., Owens v. Life Insurance Co. of Georgia*, 289 F. Supp. 2d 1319, 1326 (M.D. Ala. 2003); *Alfa Life Insurance Corp. v. Green*, 881 So. 2d 987, 991 (Ala. 2003).

24.     The *Foremost* decision forecloses the possibility of Plaintiffs here avoiding the statute of limitations bar on their fraud and suppression claims against Milford.   In their Complaint, Plaintiffs assert that the alleged fraud and/or suppression occurred when Milford sold the MEGA insurance certificate to them, which occurred on March 12, 2002.  (Exhibit A, Complaint at ¶ 7, Counts III-V).  Plaintiffs also admit that they received a May 9, 2002 letter from MEGA wherein they were notified of MEGA's acceptance of Plaintiffs' application for insurance coverage effective May 7, 2002, and that enclosed therewith was the insurance certificate issued to them, along with an explanation, in bold print, that based on the medical information provided, an Exclusionary Endorsement had been attached to the coverage.  (Exhibit A, Complaint at ¶¶ 6, 7, 9, 10; Exhibits B–E).   Therefore, the Plaintiffs, more than two years before they filed this lawsuit, received documents that if read would have put them on notice that, contrary to Milford's alleged misrepresentation and/or suppression, Plaintiffs' excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy."   Instead, Plaintiffs knew or should have known, from the documents

received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions.

25.    Plaintiffs undisputedly had in their possession documents which contradicted the alleged oral misrepresentations made by Milford and provided the information allegedly suppressed.  Thus, even if, *arguendo*, the possible exclusion of benefits based on existing medical conditions had not been fully disclosed or explained by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate, including the Exclusionary Endorsement, when they received those documents along with the May 9, 2002 letter from MEGA.  Plaintiffs do not contend that they were incapable of reading and understanding those documents or that the documents were vague or ambiguous, and in fact, in their Complaint refer to language from those documents. (Exhibit A, Complaint at ¶¶ 9–12).  Accordingly, it is reasonable to presume that Plaintiffs were capable of reading and understanding those documents in 2002 when they were issued and provided to them.  Plaintiffs as a result, in 2002, became aware of the fraud allegedly committed, and the misrepresentations and/or suppression allegedly made, by Milford.

26.    Therefore, under the *Foremost* objective standard, Plaintiffs should have discovered the possibility of fraudulent misrepresentation and/or suppression by Milford in 2002 when they purchased the coverage and received MEGA's May 9 letter, the insurance certificate, and the Exclusionary Endorsement.  The two-year statute of limitations commenced running at that time.  *See Auto Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001)("The limitations period begins to run when the plaintiff was privy to facts 'which would provoke

14

inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have lead to the discovery of the fraud.'")(citation omitted).  As such, the statute of limitations for Plaintiffs' fraud and suppression claims against Milford began running in 2002 and expired no later than 2004, which is more than two years before Plaintiffs filed this lawsuit on October 7, 2005.  Plaintiffs did not question or challenge the terms or scope of coverage in any fashion – either by exercising their right to cancel the certificate within 10 days of receipt, or by submitting a written request to MEGA within 90 days of the May 9, 2002 letter requesting the reasons for the coverage decision, or by submitting in one year a written request for consideration of removal of the exclusions outlined in the Exclusionary Endorsement along with medical evidence related to such conditions.  Nevertheless, even if Plaintiffs had made a written request for removal of the medical exclusions in May of 2003, they still waited more than two years from that date to file this lawsuit.  As a result, Plaintiffs' claims against Milford are barred by the applicable two-year statute of limitations.[2]

27.    Moreover, the association of Milford as an independent contractor agent for MEGA terminated on December 14, 2002, more than two years before the Plaintiffs' Complaint was filed and thus outside the statute of limitations.  Therefore, Milford could not have made any misrepresentations or suppressions of material fact inside the statutory period, such that Plaintiffs' fraud and suppression claims against him have no merit.

---

[2]      In a factually similar case, the Alabama Supreme Court, even under the previous justifiable reliance standard enunciated in *Hickox v. Stover*, 551 So. 2d 259 (Ala. 1989)(overruled by *Foremost*), found that documents provided to the plaintiff provided sufficient notice to start the running of the two-year statute of limitations period for plaintiff's fraud claims, finding those claims time-barred.  *Liberty National Life Insurance Co. v. Parker*, 703 So. 2d 307 (Ala. 1997).

28.    Since the Plaintiffs' fraud and suppression claims against Milford are barred by the statute of limitations, there is no possibility that Plaintiffs can establish those causes of action against Milford.

**D.     Plaintiffs Cannot Establish Breach of Contract or Bad Faith.**

29.    In addition, as for Plaintiffs' breach of contract and bad faith claims against Milford, the Alabama Supreme Court has specifically held that a plaintiff cannot pursue breach of contract and/or bad faith claims against an insurance agent arising out of alleged breaches of the insurance contract.  In *Ligon Furniture Co. v. O.M. Hughes Insurance, Inc.*, 551 So. 2d 283 (Ala. 1989), the Alabama Supreme Court affirmed summary judgment against the plaintiff on claims against an insurance agent.  The Court held that Hughes (the agent) was not a party to the insurance contract; thus, the plaintiff could not recover on a breach of contract claim.  *Ligon*, 551 So. 2d at 285.  Addressing a bad faith claim, the Court affirmed summary judgment in favor of the agent because "bad faith" claims only apply to parties to the insurance contract.  *Id.*  Four years later, the Alabama Supreme Court reaffirmed its ruling in *Ligon* that a breach of contract claim does not exist against a broker who placed insurance coverage for the plaintiff.  *See Pate v. Rollison Logging Equipment, Inc.*, 628 So. 2d 337 (Ala. 1993).  In *Pate*, the Court held that "Anderson (the broker) cannot be liable for breach of contract, because he acted as a broker to place the insurance and was not a party."  *Pate*, 628 So. 2d at 343.

30.    Federal courts in Alabama have also addressed the issue of breach of contract and bad faith claims against insurance agents/brokers and concluded that *Ligon* controlled the issue.  *See Bullock v. United Benefit Insurance Co.*, 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001)(finding that the insurance agent was not a proper defendant for a breach of contract claim by the insured); *McDonald v. Integon General Insurance Co.*, 1996 U.S. Dist. Lexis 16890 (S.D.

16

Ala. 1996)(insurance agent, who was not a party to the insurance contract, could not be liable for breach of contract or bad faith); *Vari-Care, Inc. v. ITT Hartford Insurance Group*, 1994 U.S. Dist. Lexis 10326 (S.D. Ala. 1994)(bad faith claim could not be maintained against a non-party to the insurance contract).

31.    The fact that Alabama law does not recognize a breach of contract and/or bad faith claim against the insurance agent/broker for alleged breaches of the insurance contract has been recognized as a basis to support a claim of fraudulent joinder. *See Wright v. State Farm Fire & Casualty Co.*, 1997 U.S. Dist. Lexis 2988 (M.D. Ala. 1997). In *Wright*, Judge Albritton refused to remand the case after removal by the defendant alleging that the resident agent had been fraudulently joined as a defendant. *Wright*, 1997 U.S. Dist. Lexis 2988 at *8-9. The plaintiffs' complaint sought to recover against the resident agent for alleged bad faith in the handling of a claim on their insurance policy with State Farm.[3]    *Id.* at *2. The Court, citing *Ligon*, recognized that a "bad faith" claim in Alabama is only cognizable "in the context of a breach of an insurance contract." *Id.* at *7. The Court held:

> The tort of bad faith is based upon a breach of the duty of good faith and fair dealing owed by an insurance company to its insured, and in *Ligon*, the Alabama Supreme Court specifically refused to extend liability to the insurance company's adjuster. Thus, while an adjuster or other agent may commit acts which establish bad faith, it is the company which is liable. Consequently, Mullins (the insurance agent) cannot be held liable for bad faith.

*Id*.

32.    In the present case, the insurance contract is between MEGA and Plaintiffs – the insurer and the insureds. Milford is not a party to the insurance contract. It is clear from the holdings in *Ligon* and its progeny, that an insurance agent/broker is not a party to the insurance

---

[3]    The plaintiffs also asserted breach of contract and fraud claims against State Farm but not the resident agent.

contract issued by an insurance company to the insured. Since an insurance agent/broker is not a party to the insurance contract, causes of action do not exist against the insurance agent/broker, in this case Milford, for alleged breach of contract and/or bad faith under Alabama law. Therefore, Milford is not a proper defendant for Plaintiffs' breach of contract claim or bad faith claim. Accordingly, there is no possibility that Plaintiffs can establish a breach of contract or bad faith claim against Milford.

33.     Plaintiffs also allege that MEGA cannot satisfy the "new requirement for establishing fraudulent joinder" created by the Fifth Circuit Court of Appeals in *Collins v. American Home Products Corp.*, 343 F.3d 765 (5th Cir. 2003), *cert. denied*, 125 S. Ct. 1823, 161 L. Ed. 2d 755 (2005). *Collins* is inapposite to this case. In *Collins*, the Court found that a case was not removable under a fraudulent joinder theory if the grounds for asserting fraudulent joinder were also a <u>complete defense</u> to the claims asserted against the nonresident defendant. Here, the grounds for asserting fraudulent joinder do not provide MEGA with a <u>complete</u> defense to all of the claims asserted against MEGA, as evidenced by Plaintiffs' claims for breach of contract and bad faith which, under Alabama law, lie only against MEGA and not Milford (as discussed above in this section of MEGA's response). Therefore, *Collins* does not preclude this lawsuit from being removed to this Court.

        **E.     <u>Plaintiffs Cannot Establish Outrage.</u>**

34.     Plaintiffs assert a claim for outrage against Defendants, including Milford. In *American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980), the Alabama Supreme Court held that a plaintiff must establish: (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. Specifically, in *Inmon*, in

18

defining the level of extreme conduct necessary to support a claim for outrage, the Court stated "[t]he emotional distress [resulting from the conduct] must be so severe that no reasonable person could be expected to endure it. The recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme . . . . by extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon*, 394 So. 2d at 365 (citations omitted).

35.    In the present case, Plaintiffs assert that Milford told them that any exclusionary endorsement issued with the MEGA insurance certificate would be lifted or rescinded after two years from the inception of the certificate. Plaintiffs however admittedly received the insurance certificate, the Exclusionary Endorsement and correspondence from MEGA, which outlined the coverage's terms, conditions, benefits and exclusions. As discussed above, the clear language contained in those documents shows that Plaintiffs' fraud and suppression claims against Milford have no merit, primarily because Plaintiffs could not have reasonably relied on Milford's alleged misrepresentations or suppression of material fact. Plaintiffs' claims against Milford for breach of contract and bad faith also cannot be established under Alabama law. Moreover, Plaintiffs had a 10-day right to examine the certificate upon receipt, and if not satisfied that it met their insurance needs, they could have, within that timeframe, cancelled the coverage, received a refund of all premiums paid, and had the certificate treated as if it had never been issued. Plaintiffs did not take advantage of that privilege. Plaintiffs also could have but did not submit a written request to MEGA within 90 days of the May 9, 2002 letter, requesting the reasons for MEGA's coverage decision. Plaintiffs also could have but not did submit in one year a written

request for consideration of removal of the medical exclusions outlined in the Exclusionary Endorsement along with medical evidence related to such conditions.

36.     There simply is no basis for any claim under Alabama law that Milford's alleged misconduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency," or could be "regarded as atrocious and utterly intolerable in a civilized society."   Plaintiffs cannot establish their claim for outrage against Milford.

**F.     Plaintiffs' Outrage Claim is Barred by the Statute of Limitations.**

37.     The Alabama Supreme Court's strong language in *Archie v. Enterprise Hospital & Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987), suggests that all outrage claims are governed by the two-year statute of limitations found in Ala. Code § 6-2-38.   The Court said as much in *Jenkins v. United States Fidelity & Guaranty Co.*, 698 So. 2d 765, 768 n.5 (Ala. 1997). Plaintiffs' claims for outrage stem from the alleged misrepresentations and/or suppression of material fact made by Milford at the time Plaintiffs applied for the MEGA insurance certificate. Plaintiffs applied for and received their insurance certificate in 2002.   Plaintiffs did not file this lawsuit until October 7, 2005, and thus did not bring this claim for outrage within the ensuing two-year statutory period.   Also, in the May 9, 2002 letter that Plaintiffs received from MEGA, Plaintiffs were informed that they could make a written request for removal of their medical exclusions in one year.  However, even if Plaintiffs had made that request in May of 2003, they still have waited more than two years from that date to file this lawsuit.  Consequently, Plaintiffs' claim against Milford for outrage is barred by the expiration of the two-year statute of limitations.

## II.    __Milford Was Not Required to Join in the Removal.__

38.    In addition, Plaintiffs assert that MEGA's Notice of Removal is defective because Milford did not join in the Notice of Removal.  That argument must fail.  MEGA's Notice of Removal explains therein why Milford did not need to join in the removal.  Specifically, MEGA explains in its removal papers that at the time of removal, Milford was not served with the summons and complaint and that he has been fraudulently joined to the lawsuit.

39.    Removability is determined in accordance with the plaintiff's pleading at the time of the petition for removal.  *See, e.g., Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S. Ct. 347, 349,  83 L. Ed. 334 (1939).  Courts interpreting the removal statute in cases involving multiple defendants consistently require all underlined served defendants to join in or consent to the removal petition within 30 days of service on the first-served defendant.  *See, e.g., Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349*, 427 F. 2d 325, 326-327 (5th Cir. 1970)[4]; *Miles v. Kilgore*, 928 F. Supp. 1071, 1076 (N. D. Ala. 1996).  Here, service was not perfected on Milford prior to the expiration of 30 days from the date of service on the first-served defendant (MEGA).   That is, it is undisputed that more than 30 days after MEGA was served with the summons and complaint, and 18 days after this case was removed, Milford was served with the summons and complaint (Plaintiffs admit in their brief that Milford was not served until December 2, 2005 -- Plaintiffs' brief, p. 8).  Thus, at the time of filing of the Notice of Removal, Milford had not yet been served, and thus was not required to join in or consent to the Notice of Removal.

---

[4]    In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), this Court adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

40.    Moreover, in cases involving alleged fraudulent joinder of parties, application of the requirement of consent to removal by all co-defendants to improperly or fraudulently joined parties would be non-sensible, as removal in those cases is based on the contention that no other proper defendant exists. *See Jernigan v. Ashland Oil*, 989 F. 2d 812, 816 (5th Cir.), *cert. denied,* 510 U.S. 868, 114 S. Ct. 192, 126 L. Ed. 2d 150 (1993). That is, the "unanimity rule," which requires that all served defendants consent to removal, is subject to the following exception: "unless and until the case is remanded . . . it is not necessary that a fraudulently or improperly joined defendant join with the other defendants in a petition for removal." *Erkins v. American Bankers Insurance Co. of Florida*, 866 F. Supp. 1373, 1375 (N.D. Ala. 1994)(citations omitted); *see also Emrich v. Touche Ross & Co.*, 846 F. 2d 1190, 1193 n.1 (9th Cir. 1988)(holding that all properly served defendants must join in petition for removal except for nominal, unknown, or fraudulently joined parties); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F. 2d 875, 877 (1st Cir. 1983)(holding that party fraudulently joined to defeat removal need not join in a removal petition and is disregarded in determining diversity of citizenship). MEGA's Notice of Removal is not defective because Milford did not join in the removal.

## **CONCLUSION**

Based upon the arguments and evidence presented in MEGA's Notice of Removal and herein, MEGA has demonstrated that this Court has diversity jurisdiction pursuant to the provisions of 28 U.S.C. § 1332. Because Milford was fraudulently joined and is due to be dismissed, complete diversity exists among Plaintiffs and MEGA. In addition, it is undisputed that the amount in controversy for federal diversity jurisdiction is satisfied. MEGA respectfully requests that the Court deny the Plaintiffs' Motion for Remand and Costs.

/s/Pamela A. Moore
JAMES W. LAMPKIN II (LAMPJ7474)
PAMELA A. MOORE (MOORP5421)
Attorneys for Defendant
The MEGA Life and Health Insurance Company

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)
pam@alfordclausen.com

CERTIFICATE OF SERVICE

    I hereby certify that on December 30, 2005, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

        Gary D. Bradshaw, Esq.
        P.O. Box 311412
        Enterprise, AL  36331-1412
        gbradshaw@adelphia.net

        Steven E. Blair, Esq.
        P.O. Box 310843
        Enterprise, AL  36331-0843
        sblair506@hotmail.com

        Dwain D. Hartwick, Esq.
        P.O. Box 311526
        Enterprise, AL  36331-1526
        dhartwick@ala.net

        Wilmer R. Tharpe, Esq.
        621 W. State Highway 92
        Newton, AL 36352-7935
        wrtharpe@aol.com

/s/Pamela A. Moore