IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM MEADOWS AND JEANIE MEADOWS, | * * * | |
| Plaintiffs, | * * | |
| vs. | * * | CASE NO. 1:05-cv-1091-MEF-VPM |
| THE MEGA LIFE AND HEALTH INSURANCE COMPANY, AND ITS AGENT, MICHAEL JOSHUA MILFORD, ET AL., | * * * * * | |
| Defendants. | * | |

**DEFENDANT MICHAEL JOSHUA MILFORD'S REPLY BRIEF
TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**

COMES NOW defendant, Michael Joshua Milford ("Milford"), by and through his undersigned counsel, and files this reply brief to Plaintiffs' response to Milford's motion to dismiss, and in support hereof states as follows:

**I.    Milford Was Not Required to Consent to the Removal.**

1.    Plaintiffs begin by asserting that this Court does not have jurisdiction over Milford because he did not join in the Notice of Removal filed by defendant The MEGA Life and Health Insurance Company ("MEGA"), within 30 days after he was served with the summons and complaint in federal court. *See* Plaintiffs' Response. However, as explained in MEGA's Notice of Removal and in its brief in opposition to Plaintiffs' motion for remand and costs, removability is determined in accordance with a plaintiff's pleading at the time of the petition for removal. *See, e.g., Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S. Ct. 347, 349, 83 L. Ed. 334 (1939). Courts interpreting the removal statute in cases involving multiple defendants consistently require all served defendants to join in or consent to the removal petition

within 30 days of service on the first-served defendant. *See, e.g., Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349*, 427 F. 2d 325, 326-327 (5th Cir. 1970)[1]; *Miles v. Kilgore*, 928 F. Supp. 1071, 1076 (N. D. Ala. 1996). Here, service was not perfected on Milford prior to the expiration of 30 days from the date of service on the first-served defendant (MEGA). It is undisputed that Milford in fact was not served until 18 days <u>after</u> this case was removed. Thus, at the time of filing of the Notice of Removal, Milford had not yet been served, and therefore was not required to join in or consent to the removal.

   2. Moreover, in cases such as this one involving the fraudulent joinder of parties, application of the requirement of consent to removal by all co-defendants to improperly or fraudulently joined parties would be non-sensible, as removal in those cases is based on the contention that no other proper defendant exists. *See Jernigan v. Ashland Oil*, 989 F. 2d 812, 816 (5th Cir.), *cert. denied,* 510 U.S. 868, 114 S. Ct. 192, 126 L. Ed. 2d 150 (1993). That is, the "unanimity rule," which requires that all served defendants consent to removal, is subject to the following exception: "<u>unless and until the case is remanded . . . it is not necessary that a fraudulently or improperly joined defendant join with the other defendants in a petition for removal</u>." *Erkins v. American Bankers Insurance Co. of Florida*, 866 F. Supp. 1373, 1375 (N.D. Ala. 1994)(citations omitted)(emphasis added).[2] This exception to the unanimity rule applies here and remand is not required as argued by Plaintiffs.

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), this Court adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[2] *See also Emrich v. Touche Ross & Co.*, 846 F. 2d 1190, 1193 n.1 (9th Cir. 1988)(holding that all properly served defendants must join in petition for removal except for nominal, unknown, or fraudulently joined parties); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F. 2d 875, 877 (1st Cir. 1983)(holding that party fraudulently joined to defeat removal need not join in a removal petition and is disregarded in determining diversity of citizenship).

II. **Plaintiffs' Cornerstone Fraud and Suppression Claims Against Milford Must Fail.**

3.  Plaintiffs assert that Milford's defense based on lack of reasonable reliance pursuant to the Alabama Supreme Court's decision in *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997), is misplaced in this case. That argument must fail. In *Foremost*, the Alabama Supreme Court held that "the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost*, 693 So. 2d at 421. The Court termed that standard as the "reasonable reliance" standard. That is, to recover in a fraud action, a plaintiff must prove that he or she reasonably relied on the defendant's alleged misrepresentation. Under Alabama law, a contracting party has an affirmative duty to read the contracts and related legal documents they sign or receive. *Id.* The Eleventh Circuit Court of Appeals has recognized this "duty to read" requirement:

> … Alabama law imposes upon a party the duty to read and inspect any document that might affect that person's legal rights or liabilities. It must be said that the receipt of such a document would "provoke inquiry by a person of ordinary prudence," and that inquiry necessarily would consist of actually reading the document. This obligation is part of the "concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests," as stated in *Torres*. If the facts constituting an alleged fraud claim would be apparent from simply reading a given document, a plaintiff's failure to do so renders his reliance on previous misrepresentations unreasonable under the circumstances.

*Ramp Operations, Inc. v. Reliance Ins. Co.*, 805 F.2d 1552, 1556 (11th Cir. 1986).

4.  Plaintiffs could not have reasonably relied on Milford's alleged fraudulent representations relating to the benefits, particularly the possible exclusions of the MEGA insurance certificate, because of the content of the documents provided to Plaintiffs by MEGA. Plaintiffs undisputedly received a May 9, 2002 letter and enclosed documents from MEGA,

accepting Plaintiffs for coverage and providing the insurance certificate (including the enrollment application) and the Exclusionary Endorsement.  MEGA, in its May 9 letter, requested that Mr. Meadows read the enclosed Coverage of Insurance carefully and call MEGA's toll-free number if he had any questions, so that when he called upon the benefits provided, he could be confident that they would be paid promptly and accurately.  That letter also explained in clear, bolded language that an Exclusionary Endorsement had been attached to the coverage based on the medical information provided by Plaintiffs.  Furthermore, the letter outlined the period of time (one year) and procedure for reconsideration of those exclusions.  The letter also indicated that should Plaintiffs request the reasons for MEGA's coverage decision (which included the issuance of the Exclusionary Endorsement), Plaintiffs should send a written request within 90 days of the date of the letter.  Nowhere in these documents did they reflect that the Endorsement would automatically be lifted after two years.

     5.     Those documents unquestionably put Plaintiffs on notice of the alleged fraud -- that, contrary to Milford's alleged misrepresentation, Plaintiffs' excluded medical conditions would not simply "be lifted or rescinded after two (2) years from the inception of the policy." Plaintiffs knew or should have known, from the documents received in 2002, that depending on the medical conditions, the exclusions could be reconsidered in one year, and that Plaintiffs would need to submit a written request for consideration of removal, along with such medical evidence as may be available at the time which related to the excluded medical conditions. Plaintiffs do not assert that these documents did not contradict the alleged oral misrepresentations made by Milford.  Also, Plaintiffs obviously read the documents and were aware of the contradiction (assuming, *arguendo*, that Milford make the alleged fraudulent statement in the first place), given that they discuss the documents in their Complaint and assert

in their response that they "were not alarmed" by the content of those documents. *See* Complaint; *see also* Plaintiffs' Response. Plaintiffs instead made a deliberate decision to ignore written contract terms.

   6. As a result, Plaintiffs' reliance on Milford's alleged fraud and suppression was not reasonable. Consequently, Plaintiffs cannot establish each of the requisite elements of those claims against Milford, because Plaintiffs cannot show that they reasonably relied on Milford's alleged fraud and/or suppression. Plaintiffs have failed to state a claim upon which relief can be granted. Plaintiffs' fraud and suppression claims against Milford should be dismissed.

**III.** **Plaintiffs' Fraud, Suppression, and Outrage Claims Against Milford are Time-Barred.**

   7. The statute of limitations for Plaintiffs' fraud and suppression claims is two years. *See* Ala. Code §§ 6-2-3, 6-2-38; *see, e.g., Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001); *Foremost Insurance Co. v. Parham*, 693 So. 2d 409, 417 (Ala. 1997). In *Foremost*, the Alabama Supreme Court re-established that the objective standard for determining the accrual date for a fraud or suppression claim imposes a duty to read documents received in connection with a particular transaction. *Id.* at 421. Fraud claims accrue upon the earlier of: (1) actual discovery of the alleged fraud; or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms. *Id.* In addition, the Alabama Supreme Court's strong language in *Archie v. Enterprise Hospital & Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987), suggests that all outrage claims are governed by the two-year statute of limitations found in Ala. Code § 6-2-38 (the Court said as much in *Jenkins v. United States Fidelity & Guaranty Co.*, 698 So. 2d 765, 768 n.5 (Ala. 1997)).

8.      With regard to Plaintiffs' argument that the claims in their Complaint are not barred by the expiration of the applicable statute of limitations, they assert that Milford's alleged statement that the Exclusionary Endorsement would be removed automatically from the coverage after two years was fraudulent and that he is therefore liable to them -- in spite of MEGA's documentation to the contrary that Plaintiffs admittedly received in 2002.  *See* Plaintiffs' Response.  As discussed above, those documents included a copy of the insurance contract and the Exclusionary Endorsement, explained the Endorsement, offered a way to obtain additional information for the reasons why the Endorsement had been issued, and outlined the procedure for requesting that the Endorsement be removed after one year.  Those documents did not reflect that the Endorsement would be removed automatically in two years.

9.      Plaintiffs do not contend that they were not in possession of the documents from MEGA from their receipt of them in May of 2002 until Plaintiffs filed this lawsuit, such that they could have reviewed them at any time.  Plaintiffs undisputedly had in their possession documents that contradicted the alleged oral misrepresentations made by Milford and provided the information allegedly suppressed.  Thus, even if, *arguendo*, the possible exclusion of benefits based on existing medical conditions had not been fully disclosed or explained by Milford to Plaintiffs, they knew or should have known of the terms, conditions and benefits of the insurance certificate, including the Exclusionary Endorsement, when they received those documents along with the May 9, 2002 letter from MEGA.  Plaintiffs do not contend that they were incapable of reading and understanding those documents or that the documents were vague or ambiguous, and in fact, in their Complaint refer to language from those documents.  Accordingly, it is reasonable to presume that Plaintiffs were capable of reading and understanding those documents in 2002 when they were issued and provided to them.  Plaintiffs as a result, in 2002, became aware of the

fraud allegedly committed, and the misrepresentations and/or suppression allegedly made, by Milford.

10.     Therefore, under the *Foremost* objective standard, Plaintiffs should have discovered the possibility of fraudulent misrepresentation and/or suppression by Milford in 2002 when they purchased the coverage and received MEGA's May 9 letter, the insurance certificate, and the Exclusionary Endorsement. The two-year statute of limitations commenced running at that time. *See Auto Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001)("The limitations period begins to run when the plaintiff was privy to facts 'which would provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have lead to the discovery of the fraud.'")(citation omitted). Plaintiffs' claim for outrage stems from the alleged misrepresentations and/or suppression of material fact made by Milford at the time Plaintiffs applied for the MEGA insurance certificate in 2002.

11.     As such, the statute of limitations for Plaintiffs' fraud and suppression claims as well as their outrage claim against Milford began running in 2002 and expired no later than 2004, which is more than two years before Plaintiffs filed this lawsuit on October 7, 2005. Plaintiffs did not question or challenge the terms or scope of coverage in any fashion – either by exercising their right to cancel the certificate within 10 days of receipt, or by submitting a written request to MEGA within 90 days of the May 9, 2002 letter requesting the reasons for the coverage decision, or by submitting in one year a written request for consideration of removal of the exclusions outlined in the Exclusionary Endorsement along with medical evidence related to the excluded medical conditions. Nevertheless, even if Plaintiffs had made a written request for removal of the medical exclusions in May of 2003, they still waited more than two years from

that date to file this lawsuit. Consequently, these claims against Milford are barred by the applicable two-year statute of limitations.[3]

12.     Moreover, the association of Milford as an independent contractor agent for MEGA terminated on December 14, 2002, more than two years before the Plaintiffs' Complaint was filed and thus outside the statute of limitations. Therefore, Milford could not have made any misrepresentations or suppressions of material fact or committed the tort of outrage inside the statutory period, such that those claims against him have no merit.

## IV.     Limited Remand Discovery.

13.     Plaintiffs contend that they only need to outline a short and plain statement of their claims, and that the Court, at this stage of the litigation, must accept Plaintiffs' allegations as true. In this case, the challenged pleading, namely the Plaintiffs' Complaint, offers facts which, as outlined in MEGA's Notice of Removal and in Milford's motion to dismiss, serve as grounds for showing this Court that Milford was fraudulently joined to this lawsuit and is due to be dismissed. That is, even proceeding to accept Plaintiffs' allegations as true demonstrates that Plaintiffs' claims against Milford should be dismissed. Plaintiffs admit that they received documentation from MEGA in 2002, including a letter from MEGA, which outlined the coverage issued, explained the Exclusionary Endorsement and why it had been issued, offered a way to obtain additional information for the reasons why the Endorsement had been issued, explained the procedure for requesting that the Endorsement be removed, and had nothing anywhere in any of them indicating that the Endorsement would automatically be lifted from the

---

[3]     In a factually similar case, the Alabama Supreme Court, even under the previous justifiable reliance standard enunciated in *Hickox v. Stover*, 551 So. 2d 259 (Ala. 1989)(overruled by *Foremost*), found that documents provided to the plaintiff provided sufficient notice to start the running of the two-year statute of limitations period for plaintiff's fraud claims, finding those claims time-barred. *Liberty National Life Insurance Co. v. Parker*, 703 So. 2d 307 (Ala. 1997).

coverage after two years (instead, the documents contained clear, unambiguous language to the contrary).

14.  However, in their response to Milford's motion to dismiss, Plaintiffs now are asserting additional arguments based on facts that are in conflict or in addition to the facts outlined in the Complaint, in an effort to survive the motion to dismiss Milford (and which in effect also has a bearing on similar arguments made by MEGA in its Notice of Removal as to the fraudulent joinder of Milford in this case).  For the very first time, Plaintiffs are asserting that they did not have the degree of sophistication or education to realize, back in 2002, that the Exclusionary Endorsement would not automatically be removed from their coverage in two years, and that it was up to them to request consideration of removal of those exclusions after one year and to provide medical records related to their excluded medical conditions.  *See* Plaintiffs' Response.  Specifically, Plaintiffs are alleging that they lacked the degree of sophistication and education to "see through Milford's deceptive manner," but interestingly do not assert that they lacked the degree of sophistication and education to read and understand the insurance documents that were provided to them by MEGA in 2002.  *Id.*  It is also interesting that Plaintiffs heretofore have not  -- in their Complaint, their motion for remand and costs, or their reply brief on their motion to remand -- made any mention of their educational background or degree of sophistication.  Plaintiffs appear to be raising a new argument that they were justified in relying on the alleged fraud committed by Milford because they did not have the requisite education or degree of sophistication to do otherwise.

15.  As a result, Milford and MEGA submit that limited discovery on this issue is appropriate, since these issues tie in with this Court's jurisdiction as well (as outlined in the

Notice of Removal filed by MEGA based upon the fraudulent joinder of Milford to this case).[4] Since Plaintiffs are now putting these circumstances at issue, in an apparent last ditch effort to show that their reliance on Milford's alleged fraud was reasonable, and that they were unaware of any fraud until some time within the two-year statutory period, Defendants, via a separate motion being filed on the date hereof, request the Court allow the parties the opportunity to conduct limited remand discovery, particularly with respect to Plaintiffs' new assertions as to their educational background and level of sophistication. Notwithstanding the opposition to the motion for remand and costs and the disagreement with Plaintiffs' conclusion that there are viable claims against Milford, the Defendants submit that such discovery may be relevant not only to this Court's jurisdiction (in particular, the fraudulent joinder of Milford), but also to the pending motion to dismiss Milford. Due to Plaintiffs' new assertions in their response, the Defendants should be given the opportunity to supplement their arguments to show that Plaintiffs could not have reasonably relied on the alleged fraud of Milford. Such limited discovery will provide additional guidance to this Court in a determination of its jurisdiction and the viability of the claims against Milford. The Defendants expect to provide further proof that none of Plaintiffs' claims against Milford are viable under applicable Alabama law and that Plaintiffs should not be allowed to defeat MEGA's right to a federal forum in this case. Allowing the parties adequate time to conduct such discovery and then additional time to report to the Court thereafter will more efficiently administer this case and will not prejudice any party.

---

[4] To determine whether a resident defendant has been fraudulently joined, district courts should apply a standard similar to that used for a ruling on a motion for summary judgment under Federal Rule of Civil Procedure 56(b). *See Crowe v. Coleman*, 113 F. 3d 1536, 1538 (11th Circuit 1997)(citations omitted).

**V.     Plaintiffs' Breach of Contract and Bad Faith Claims Against Milford Must Fail.**

16.     Plaintiffs argue that their claims for breach of contract and bad faith are viable against Milford.  The Alabama Supreme Court has specifically held that a plaintiff cannot pursue breach of contract and/or bad faith claims against an insurance agent arising out of alleged breaches of the insurance contract.  *Ligon Furniture Co. v. O.M. Hughes Insurance, Inc.*, 551 So. 2d 283 (Ala. 1989). Federal courts in Alabama have also addressed the issue of breach of contract and bad faith claims against insurance agents/brokers and concluded that *Ligon* controlled the issue.  *See Bullock v. United Benefit Insurance Co.*, 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001)(finding that the insurance agent was not a proper defendant for a breach of contract claim by the insured); *McDonald v. Integon General Insurance Co.*, 1996 U.S. Dist. LEXIS 16890 (S.D. Ala. 1996)(insurance agent, who was not a party to the insurance contract, could not be liable for breach of contract or bad faith); *Vari-Care, Inc. v. ITT Hartford Insurance Group*, 1994 U.S. Dist. LEXIS 10326 (S.D. Ala. 1994)(bad faith claim could not be maintained against a non-party to the insurance contract).

17.     In the present case, the insurance contract, which is attached to Milford's motion to dismiss, is between MEGA and Plaintiffs – the insurer and the insureds.  Milford simply is not a party to the insurance contract.  It is clear from the holdings in *Ligon* and its progeny, that an insurance agent/broker is not a party to the insurance contract issued by an insurance company to the insured.  Since an insurance agent/broker is not a party to the insurance contract, causes of action do not exist against the insurance agent/broker, in this case Milford, for alleged breach of contract and/or bad faith under Alabama law.  Accordingly, Milford's motion to dismiss these claims should be granted.

18.     Plaintiffs' reliance on *McCain v. Lexington Insurance Co.*, 2005 U.S. Dist. LEXIS 30074 (S. D. Ala. 2005), for the proposition that an insurance agent is not immune from contractual or bad faith liability if they are in fact parties to the contracts, is inapposite to the case at bar. In *McCain*, the complaint expressly alleged that the insurance agent <u>was</u> a party to the applicable insurance contract. Here, there is no allegation in the Complaint that Milford was a party to the insurance contract or that he had anything to do with the processing of claims for benefits under that coverage. Plaintiffs do not contend that the insurance contract reflects Milford as a party, but instead assert that their claims are still viable against Milford because Plaintiffs refer to "Defendants" in the breach of contract and bad faith counts of their Complaint and that it was "the intent of the Plaintiffs to assert that MEGA <u>and</u> Milford were contractually bound and both acted in bad faith." *See* Plaintiffs' Response. However, the documents that have been provided to this Court by MEGA with its Notice of Removal, as well as the documents provided by Milford with his motion to dismiss, clearly show that Milford was not a party to the insurance contract between MEGA and the Plaintiffs. Plaintiffs do not contend that the insurance documents provided to the Court are not true and accurate copies of those documents. Accordingly, there is, unlike in *McCain*, no conflict between the allegations of the Complaint and the insurance contract.

19.     Moreover, the *McCain* case was removed on the basis of the fraudulent joinder of the insurance agent, and the trial court found that the fraudulent joinder doctrine had no bearing on the jurisdictional propriety of the notice of removal in that case. Here, Plaintiffs and Milford are Alabama residents, and the doctrine of fraudulent joinder is applicable and provides an exception to the requirement of complete diversity of citizenship.

20. Plaintiffs' claims against Milford for breach of contract and bad faith fail as a matter of law under the *Ligon* strand of authority outlined in Milford's motion to dismiss.

## VI. <u>Plaintiffs' Outrage Claim Against Milford Must Fail</u>.

21. With respect to the claim for outrage, Plaintiffs state that they can show the elements of outrage and that this Court should not rule out the possibility that Plaintiffs could prove outrage. *See* Plaintiffs' Response. The cornerstone of Plaintiffs' Complaint is the alleged fraud committed by Milford in 2002 as an agent of MEGA. As shown herein and in previous filings, the clear language contained in the documents provided to Plaintiffs shows that Plaintiffs' fraud and suppression claims against Milford substantively have no merit, and moreover, those claims are barred by the expiration of the statute of limitations. Plaintiffs' claims against Milford for breach of contract and bad faith also cannot be established under Alabama law. Liability for outrage ensues only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized society. *See American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1980). There simply is no basis for any claim under Alabama law that Milford's alleged misconduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency," or could be "regarded as atrocious and utterly intolerable in a civilized society." Also, for the reasons outlined in the motion to dismiss and as discussed herein, Plaintiffs' outrage claims are barred by the expiration of the two-year statute of limitations. Plaintiffs' claim for outrage against Milford should be dismissed.

WHEREFORE, premises considered, Milford respectfully requests that this Court grant his Motion to Dismiss the Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim upon which relief can be granted. Milford also requests such other and further relief to which he is justly entitled.

                                  *s/ Pamela A. Moore*
                                  JAMES W. LAMPKIN II (LAMPJ7474)
                                  PAMELA A. MOORE (MOORP5421)
                                  Attorneys for Defendant
                                  Michael Joshua Milford

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

      I hereby certify that on January 17, 2006, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Gary D. Bradshaw, Esq.<br>P.O. Box 311412<br>Enterprise, AL 36331-1412<br>gbradshaw@adelphia.net | Steven E. Blair, Esq.<br>P.O. Box 310843<br>Enterprise, AL 36331-0843<br>sblair506@hotmail.com |
| Dwain D. Hartwick, Esq.<br>P.O. Box 311526<br>Enterprise, AL 36331-1526<br>dhartwick@ala.net | Wilmer R. Tharpe, Esq.<br>621 W. State Highway 92<br>Newton, AL 36352-7935<br>wrtharpe@aol.com |

                                  *s/ Pamela A. Moore*
                                  COUNSEL